Henry Wysong v. The State.

No. 1292.    Decided May 17, 1911.

Rehearing Granted April 3, 1912.

**1.—Murder—Continuance—Absent Testimony Proved by Other Witnesses.**

Where the absent testimony was sought on the assumption that the State would prove a previous difficulty between defendant and deceased, which it did not do, and the record showed that defendant proved the same facts by practically all the witnesses and the State did not contest the point, there was no error in overruling the motion for continuance.

**2.—Same—Evidence—Animus of Defendant.**

Upon trial of murder, there was no error in permitting the State to introduce testimony to show defendant's state of mind and that he was mad and prepared himself with a pistol in the presence of witness.

**3.—Same—Charge of Court—Reasonable Doubt.**

Where, the court in his charge instructed the jury that the burden of proof was on the State, that the defendant was presumed to be innocent, etc., and in case of a reasonable doubt, to find a verdict of not guilty, there was no error in failing to charge the reasonable doubt in connection with the charge on manslaughter for which defendant was convicted; under Article 723, Code Criminal Procedure.

**4.—Same—Sufficiency of the Evidence—Murder—Manslaughter.**

If the proof shows murder in the first or second degree, and even does not show manslaughter, yet where manslaughter is submitted, and the jury find defendant guilty thereof, the conviction is sustained. Following Gray v. State, 61 Texas Crim. Rep., 454, and other cases. Article 817, Code Criminal Procedure. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Austin. Tried below before the Hon. John T. Duncan, Special Judge.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

·The opinion states the case.

*Johnson, Matthaei & Thompson,* for appellant.—On question of continuance: Carter v. State, 37 Texas Crim. Rep., 403; Hyden v. State, 31 id., 401; McAdams v. State, 24 Texas Crim. App., 86.

On question of declarations of third party: Belverman v. State, 16 Texas, 131; Monk v. State, 27 Texas Crim. App., 450; Richardson v. State, 32 Texas Crim. Rep., 524; Harris v. State, 37 id., 441.

On question of reasonable doubt: Mace v. State, 6 Texas Crim. App., 470.

*C. E. Lane,* Assistant Attorney-General, and *C. G. Krueger,* for the State.—On question of continuance where testimony of the same character is produced: Walker v. State, 13 Texas Crim. App., 618; Bush v. State, 51 S. W. Rep., 239.

On question of court's charge: McCall v. State, 14 Texas Crim.

App., 353; Ashlock v. State, 16 id., 13; Edens v. State, 55 S. W. Rep., 815.

On question where physical facts bear out theory of State, no error: Bright v. State, 10 Texas Crim. App., 68; Pickett v. State, id., 290.

DAVIDSON, Presiding Judge.—Appellant was convicted of manslaughter, his punishment being assessed at two years confinement in the penitentiary.

1. Two questions are suggested for revision: First, the refusal of the continuance on account of the absence of the witness Summage. If it was deemed necessary to discuss this question, we are of opinion that the appellant was entitled to have the absent evidence before the jury, but the view we take of the case it is not necessary to go into a discussion of that question.

2. The second question presented is the want of sufficient evidence to justify the conviction. As we understand the evidence, it is shown that on the night of the homicide a lot of negroes had congregated near a store. A number of them were engaged in a game of "monte." Tobe Wilson was the dealer. There arose some trouble between Kit Tate and one of the other negroes, during which Tate exhibited a pistol. Mr. Latimer came upon the scene and interfered with a view of suppressing the trouble and making the negroes behave themselves. He took from Tate a pistol. Immediately upon his securing the pistol, the deceased, Evans, grabbed it out of his hand. Latimer demanded it. Evans told him that he would give up his pistol if Henry (appellant) would give up his. This is one phase of the testimony. Another goes to show that he stated he would not give it up, that he would die and go to hell first. Mr. Latimer ordered appellant to go home; that he immediately started in that direction and went into the store. Latimer took the deceased by the arm and carried him to the door of the store and pushed him in. He was not aware at the time that he put deceased in the store that appellant was also in there. Appellant and deceased both ordered beer. There was some question as to which one ordered it first, but after deceased ordered his beer he turned to appellant and said, "You pulled a gun on that boy out there and you know that if you do that you had just as well pull it on me." Appellant remarked, "You are a liar," or, "damn liar." Deceased then remarked to appellant, "You got your gun and I have got mine, so let's go." Deceased then reached his hand for his pistol and exhibited it as if to shoot and appellant fired twice. This is practically the substance of the immediate facts surrounding the homicide. Under this condition of the record we are of opinion that the conviction was wrong and not supported by the evidence.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

## ON REHEARING.

### April 3, 1912.

PRENDERGAST, JUDGE.—On May 17, 1911,. this cause was reversed and remanded. At the time that opinion was rendered we did not have the advantage of either a brief or oral argument for the State. The State has filed a motion for rehearing and in submitting that motion we heard an oral argument by the attorney who represented the State in the lower court and he has also filed a clear brief presenting the matter in such a forcible way as to convince us that we erred in the previous opinion and judgment.

There are but few questions in the case. The first is, appellant claims the court erred in refusing his motion for continuance. The bill presenting this question shows sufficient diligence. After substantially reciting what was expected to be proven in the case, the bill states: "That the defendant has reason to believe and has been so informed that the State will undertake to show that there was a difficulty out in the yard on the ground between Henry Wysong and Caesar Evans. Defendant expects to prove by and can prove by the witness Sam Summage (the absent witness) that there was no trouble of any kind or difficulty between Caesar Evans and Henry Wysong and can show by said witness that what did occur was between Henry Wysong and Kit Tate and that the negro Caesar Evans was taking up for his friend Kit Tate at the time of the difficulty with Henry Wysong. Defendant says that he has reason to believe that this is the only witness by whom he can prove these entire facts. It is true he can prove by Charles Latimer what occurred on the ground after he arrived there but as to any trouble that might have occurred between Henry Wysong and Caesar Evans before that time, Latimer could not testify. . . . Defendant expects to show by this witness that there had been no trouble between defendant and deceased and that there had never been any trouble between them and this fact alone will preclude the idea of express or implied malice which makes said witness an exceedingly important one and so far as the defendant is informed, he is the only witness by whom he can prove that fact. It is true that the defendant may be able to prove this fact by the State's witnesses, but defendant is not so informed that they will testify to such facts and he is entitled to have this witness present on the trial of this cause."

It will be thus seen that the testimony of this witness was sought on the assumption that the State would prove a previous difficulty between appellant and deceased. It turned out on the trial that this assumption was incorrect, because the State offered no such proof in any way. Besides, the appellant proved by practically all the witnesses who testified on the subject, in effect, that there was no previous difficulty between appellant and deceased. The State did not contest the evidence on this point.

In Bush v. State, 40 Texas Crim. Rep., 539, this court said: "It is well settled that, if substantially the same testimony as that which is absent was adduced on the trial, defendant can not be heard to complain of the refusal of the continuance. Walker v. State, 13 Texas Crim. App., 618; Allison v. State, 14 Texas Crim. App., 402; Beatey v. State, 16 Texas Crim. App., 421; Tucker v. State, 23 Texas Crim. App., 512; McAdams v. State, 24 Texas Crim. App., 86. Even where the absent testimony is material and probably true, a continuance will not be granted, unless such absent testimony would, if adduced, probably induce a more favorable verdict to the accused than that found by the jury. For collation of authorities, see Willson's New Code Criminal Statutes, bottom page 189. There was no error in refusing the continuance."

The next question is shown by appellant's bill No. 2 to this effect: That while Lillie Wilson, a witness for the State, was on the stand testifying, it was shown by her that some hours before the homicide, appellant was at the house of Mary Whitley, where a supper was in progress, and among other questions the district attorney asked her if she saw appellant have a conversation with Creasy Whitley. She said not, but that she heard him ask Mary Whitley to go and get his pistol and Mary Whitley said, "Where is the pistol," and he replied, "It is in the house I reckon," and that Creasy said, "I will go and get it," and she gave him the pistol. She told Creasy to give him the pistol. That she, Creasy, would not let him have the pistol at first, but after a long time she handed it to him. When asked why she wouldn't give it to him and what she said, defendant then objected on the sole ground that it was hearsay. The court overruled the objection and permitted the witness to state that she said to him he should not have it, because he was so mad, but afterwards she let him have it. All this occurred not only in appellant's actual presence, but the conversation was directed to him at the time. Certainly this was not hearsay. We think it was admissible. The State had the right to show appellant's state of mind—that he was mad and that he then prepared himself with a pistol and even if it was not admissible, it could in no way have injured the appellant.

The court in his charge told the jury that the burden of proof was on the State; that the defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt, and "in case you have a reasonable doubt as to his guilt you will acquit him and say by your verdict not guilty." This being the case, appellant's complaint that the court erred in not charging in connection with the charge of manslaughter, that if the jury have a reasonable doubt whether he was guilty of manslaughter they must acquit, presents no reversible error. No special charge was requested. The point was first raised on motion for new trial. While the question could be raised at that time by motion for new trial, yet, under article 723, Code Criminal Procedure, this was not such error, if error

at all, as was calculated to injure the rights of appellant and this article prohibits this court from reversing under such circumstances. "It is not necessary for the trial court, in submitting the different issues raised by the testimony, to couple on to his charge the question of reasonable doubt in every issue." Eggleston v. State, 59 Texas Crim. Rep., 542; McDaniel v. State, 63 Texas Crim. Rep., 359, 139 S. W., 1154; Conger v. State, 63 Texas Crim. Rep., 312, 140 S. W., 1112; Hutto v. State, 7 Texas Crim. App., 44; and cases therein cited; McCall v. State, 14 Texas Crim. App., 353; Farris v. State, 55 Texas Crim. Rep., 481; Ashlock v. State, 16 Texas Crim. App., 13.

The only other question raised and necessary for us to discuss and decide is whether the evidence was sufficient to sustain the verdict and within this, is whether the evidence conclusively established that appellant was entitled to be acquitted on his defense of self-defense. Clearly under appellant's evidence and his theory of the case, the jury would have been justified in acquitting him on his plea of self-defense, yet, the evidence in our opinion, is also clearly sufficient under the theory of the State to have sustained a conviction of at least murder in the second degree. We doubt if the evidence presented the question of manslaughter and we doubt if the court should have given a charge on manslaughter. However, it is unnecessary to decide that question. The court in this case did charge on manslaughter and the jury found the appellant guilty of manslaughter. The question is raised solely by the motion for new trial in the court below. Our statute, Code Criminal Procedure, article 817, says: "New trials, in cases of felony, shall be granted for the following causes, *and for no other*: . . .

(Subdivision 9.) "Where the verdict is contrary to law and evidence. A verdict is not contrary to the law and evidence, within the meaning of this provision, where the defendant is found guilty of an offense of inferior grade to, but of the same nature as the offense proved."

It is the clear and unquestioned doctrine of this State fully settled and determined, in effect, that if the proof in the case shows murder in the first or second degree, and even does not show manslaughter, yet, where manslaughter is submitted and the jury find the appellant guilty thereof, that this court can not, and will not, disturb the verdict; but on the contrary, will sustain the conviction. Gray v. State, 61 Texas Crim. Rep., 454, 131 S. W. Rep., 1179; High v. State, 54 Texas Crim. Rep., 333; Brown v. State, 50 S. W. Rep., 354; Chapman v. State, 53 S. W. Rep., 103; and the cases cited and reviewed in the case of Gray v. State, supra.

The theory of the State is—and the evidence clearly justified it and the jury doubtless believed it, otherwise it would have acquitted instead of convicting appellant—that prior to the immediate killing there had been no difficulty between appellant and deceased, but both of them were drinking and both were armed; that immediately pre-

ceding the killing there was some difficulty between appellant and Kit Tate, deceased's friend; that they were separated and deceased then started for or towards his home. Instead of going to his home, he went into the saloon right near and ordered at the counter a bottle of beer; that just then the appellant came into the saloon and passed between deceased and the bar or counter; about this time the saloon keeper handed to deceased a bottle of beer and that he was in the act of drinking it, having it up to his mouth, when appellant shot him. Appellant's contention was that just at this time the deceased had his six-shooter in his hand and threatened to kill appellant and made a demonstration as if to do so; that the appellant then shot deceased first through the hand at the web of two fingers and struck the deceased's pistol; that they then changed positions and appellant, with the second shot then fired, struck the deceased in the side and killed him. The State, however, showed by the physical facts that the deceased did not then have a six-shooter in his hand, but on the contrary he had the bottle of beer and was in the act of drinking it at the time appellant first shot him in the hand; that this shot struck the bottle in deceased's hand, shattered the glass and the shivers from it struck and cut his mouth and lips, the ball then glancing from striking the bottle and striking the ceiling; that the deceased then attempted to run out of the door and in passing appellant, the appellant then fired the second shot striking him in the side and instantly killing him. Deceased, it is true, had a pistol. It was produced and identified on the trial of the case and it was clearly shown by the physical facts that he did not have it in his hand at the time appellant first fired, striking his hand, because there was no dent or impression whatever on the handle of the pistol; that if the pistol had then been in his hand the ball would have struck and clearly made an impression thereon; that there is no other way from the physical facts to account for the ball from the first shot other than that it struck the bottle, shivered it, the shivers cutting deceased's face and lips, as shown by the testimony, which ball then glanced and struck the ceiling where it reasonably would, under the theory of the State. Appellant, by his own testimony, shows that he did not order any beer on this occasion and did not drink any or offer to treat any of his friends at the time, but all the testimony shows that the deceased had just prior thereto, ordered a bottle of beer, and that he was then in the act of drinking it when the shooting began. While it is true that the evidence shows that the deceased had a pistol and that it was found beside where he fell, yet, some of the witnesses testify that they did not see any pistol there immediately after the shooting. The theory of the State is the most reasonable one from all the testimony, and the undisputed physical facts; or, rather, the evidence clearly justified the jury to so believe.

We have carefully studied the record and evidence in this case in the light of the appellant's able briefs and presentation of the case --

and the oral argument and brief for the State, and have reached the conclusion that this case should not be reversed.

The judgment and opinion heretofore rendered reversing and remanding the cause, will, therefore, be set aside and the judgment affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE.—I can not concur. I do not care to review the law or facts. On the statement of the case as made by my brethren I think the continuance should have been granted, and the facts do not justify the judgment.