# FEBRUARY, 1915.

## CHARLIE SLAUGHTER v. THE STATE.

### No. 3377. Decided February 3, 1915.

**1.—Seduction—Continuance—Sickness of Witness.**

Where the motion for continuance disclosed that the absent witness was very sick and not able to attend court, and no additional efforts were made to secure his attendance, and his illness was of a permanent nature and no effort was made to secure his depositions, there was no reversible error in overruling the motion.

**2.—Same—Rule Stated—Absent Witness—Temporary Sickness—Permanent Sickness.**

Where the sickness of the witness is only temporary, a continuance should be granted to secure his testimony, but if the illness is of a permanent nature and there is no hope of securing the attendance of the witness at a future

term of court, the absence of such witness furnishes no ground for a continuance, as his depositions could have been taken. Following Rhea v. State, 67 Texas Crim. Rep., 197, 148 S. W. Rep., 578.

**3.—Same—Case Stated—Absent Witness—Permanent Sickness—Depositions and Want of Diligence.**

Where the absent witness was in the last stages of consumption when he was served with a subpoena, and defendant was aware that the witness would likely never be able to attend court and no efforts were made to take his depositions, the issue and return of a subpoena was not due diligence.

**4.—Same—Continuance—Bill of Exceptions—Qualifications.**

Where the bill of exceptions to the overruling of the defendant's motion for a continuance was so qualified by the court that it presented no error, defendant is bound by such qualification, and can not complain. Following Blain v. State, 34 Texas Crim. Rep., 448.

**5.—Same—Sufficiency of the Evidence—Married Man.**

Where, upon trial of seduction, defendant testified that he was a married man and that the prosecutrix knew this fact when the alleged acts of intercourse occurred, but the prosecutrix denied this, and this issue was properly submitted to the jury, there was no reversible error.

**6.—Same—Accomplice—Charge ‧ of Court—Promise of Marriage—Corroboration.**

Where the only complaint to the charge of the court was that it did not specifically charge the jury that the prosecutrix must be corroborated as to the alleged promise of marriage, but the court, in his charge on the corroboration of accomplice testimony followed approved precedent, and also instructed the jury to acquit the defendant if they believed from the evidence that she did not yield to such carnal intercourse by reason of defendant's promise of marriage, etc., there was no reversible error. Davidson, Judge, dissenting.

**7.—Same—Accomplice—Corroboration—Charge of Court.**

Where appellant complained of the charge of the court in not specifically instructing the jury that the prosecutrix must be corroborated as to the alleged promise of marriage, and submitted a requested charge which required this, which the court refused, and it appeared from the record that the court gave a proper charge on accomplice testimony and properly defined the offense of seduction, there was no reversible error. Following Campbell v. State, 57 Texas Crim. Rep., 301, and other cases. Davidson, Judge, dissenting.

**8.—Same—Rule Stated—Corroboration.**

The contention that the jury must be instructed that the accomplice must be corroborated upon every material issue in the case is not well taken; this is not the rule at common law, and no such rule has been prescribed by the Code of Criminal Procedure. Following Brown v. State, 57 Texas Crim. Rep., 570, and other cases. Davidson, Judge, dissenting.

**9.—Same—Common Law—Accomplice—Corroboration—Rule Stated.**

While at common law, the rule once prevailed that a conviction might be had upon the uncorroborated testimony of an accomplice, this rule has more recently been relaxed, and the trial judge who at common law is permitted to comment on the evidence may advise the jury not to convict unless the testimony of the accomplice is corroborated, and inasmuch as under the Criminal Code of Texas the trial judge is prohibited from commenting on the weight of the testimony, said Code requires that the judge in his charge as a matter of law must instruct the jury that the testimony of an accomplice must be corroborated, but such corroboration need not extend to every part of the accomplice testimony. Following Williams v. State, 59 Texas Crim. Rep., 347, and other cases. Davidson, Judge, dissenting.

**10.—Same—Rule Stated—Corroboration.**

If the corroboration tends to connect the defendant with the commission of the offense, it is sufficient, and it would serve no good purpose or tend to enlighten the jury to tell them that the accomplice must be corroborated in his statement in any material matter. Following Hoyle v. State, 4 Texas Crim. App., 239, and other cases.

**11.—Same—Sufficiency of the Evidence—Circumstantial Evidence—Corroboration.**

Where, upon trial of seduction, the testimony of the prosecutrix made out a clear case, and the facts and circumstances testified to by other witnesses amply corroborated her testimony as to the illicit intercourse and the promise of marriage by defendant, the conviction was sustained, although defendant denied any promise of marriage. Davidson, Judge, dissenting.

Appeal from the District Court of Taylor. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of seduction; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Cunningham & Sewell* and *Woodward & Baker,* for appellant.—On question of corroboration of accomplice testimony: McCullar v. State, 36 Texas Crim. Rep., 213; Barnes v. State, 37 id., 320; Fine v. State, 45 id., 290; Woolley v. State, 50 id., 214; Snodgrass v. State, 31 S. W. Rep., 366; Spenrath v. State, 48 S. W. Rep., 192.

On question of court's charge on accomplice testimony: Muhlhause v. State, 56 Texas Crim. Rep., 288, 119 S. W. Rep., 866, and cases supra.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—The indictment in this case was returned August 30, 1911. Appellant left Abilene, and his whereabouts was not ascertained until in July, 1914, when he was located at Woodward, Oklahoma, arrested and brought back to Taylor County. This case was called for trial on September 14, 1914, and, on the overruling of his motion for a continuance, he was tried and convicted of seduction, and his punishment assessed at three years confinement in the State penitentiary.

The first error relied on is that the court erred in overruling this, his first application for a continuance. After his arrest in July, appellant, on August 18, 1914, had a subpoena issued for Mr. and Mrs. T. G. Cloe to Fisher County, which was served on them on the 20th day of August, the return of the sheriff being worded: "T. G. Cloe is very sick and not able to go. Refused to make bond," which return was filed in the office of the district clerk on the 22nd day of August, 1914, twenty-three days before the case was tried. No additional effort was made to secure the testimony of this witness. As the testimony it is alleged the witness would give would be material, the question presented is, was the diligence used to secure his attendance sufficient in law? If the witness was suffering from only temporary sickness, the diligence, we think, would be sufficient, for the rule of law is, as stated by Mr. Wharton in his work on the Law of Evidence, sec. 179:

"Thus in an old case, where a witness, on his journey to the place of trial, was taken so ill as to be unable to proceed, we find it recorded that his deposition was allowed to be read; and the same liberty would apply to depositions taken in a prior case between the same parties. At the same time it should appear that the sickness is of a character imposing permanent inability, as otherwise, to adopt a criticism of Lord Ellenborough, there would be very sudden indispositions and recoveries. The rule laid down by Lord Ellenborough, that where a witness is taken ill the party requiring his testimony should move to put off the trial, is less open to objection and abuse. It is, of course, in such cases, a conflict of inconveniences; but in criminal trials, where the objection to secondary evidence of this class is peculiarly strong, it has been ruled that the deposition of a woman, who was so near her confinement as to be unable to attend a trial, could not at common law be received. It is otherwise, however, when from the nature of the illness or other infirmity no reasonable hope remains that the witness will be able to appear in court on any future occasion."

Under this text a number of authorities are cited, and were quoted approvingly by this court in Rhea v. State, 67 Texas Crim. Rep., 197, 148 S. W. Rep., 578, and other cases. Thus where the sickness of the witness is only temporary, a continuance should be granted to secure his testimony, but if the illness is of a permanent nature, and there is no hope of securing the attendance of the witness at a future term of the court, the absence of such a witness furnishes no ground for a continuance, for the party desiring the testimony of the witness should take his depositions, under article 818 of the Code of Criminal Procedure, which provides for the taking of depositions of an aged or infirm witness by the defendant. When this application was presented the court heard evidence as to the diligence used to secure the testimony of the absent witness, and Mrs. Cloe testified that her husband had tuberculosis and was in the last stages of that disease, *and would never be able to attend court.* That the *defendant had known* for two or three months that her husband would not be able to attend court, and would likely never be able to attend court. The evidence further shows that defendant was at the home of the absent witness some seven weeks before the trial, and conversed with the witness and was aware of his condition when he had the subpoena issued for him. Under such circumstances the issuance of a subpoena would be no diligence, and had he then told his attorneys the condition of the witness we are satisfied they would have had no subpoena issued, but would have told him it would be neces-. sary to take his depositions, as it would be apparent this was the only way the testimony of the witness ever could be secured. Knowledge having been traced home to defendant, it is manifest that he used no diligence to secure this testimony. The court, in overruling the application, entered the following order: "At this time came on to be heard the defendant's first application for a continuance, and it appearing to the court that the indictment was filed herein on August 30, 1911, that defendant absented himself from this court and State and kept beyond

the reach of the officers of this State, from said date until about the first of August, 1914, when he was apprehended; and it further appearing to the court that the subpoena for said T. G. Cloe was returned and filed in this court on August 22, 1914, showing that said witness was sick, and because of the further record taken in this case, made a part hereof, and it further appearing to the court that the defendant has made no effort whatever to take the deposition of said witness, the court is therefore of the opinion that due diligence had not been shown, and that said motion should be overruled. It is therefore ordered, adjudged and decreed by the court that said motion be and the same is hereby in all things overruled." In approving the bill of exceptions to the action of the court in overruling the application for a continuance, the court says: "The above and foregoing bill of exceptions, being this day presented to me for approval, is approved and ordered filed with the following explanation, towit: The evidence showed that in plenty of time to have taken the deposition of the absent witness, the defendant knew that said witness was seriously sick, and would probably be dead before another term of court, and would in any event never likely be able to attend court; furthermore, the evidence on the trial indicated strongly that said witness if present, would not swear to the things set forth in said application." As thus qualified the bill presents no error, and he having accepted same and filed it, he is bound by such qualification. He is estopped from further complaint. Blain v. State, 34 Texas Crim. Rep., 448.

Appellant testified on the trial of the case and admitted having sexual intercourse with the prosecuting witness, but denied that he was engaged to marry her, or that he had ever promised to do so, and testified that he was a married man and the prosecutrix knew this fact when the acts of intercourse occurred. Of course, if the defendant was a married man at the time of the alleged seduction, and the prosecutrix knew that fact, he could not be guilty of seduction under our law, but the prosecutrix denied that she knew that fact, and this was an issue to be submitted to the jury. The court on this issue, and the issue of corroboration of an accomplice, charged the jury:

"You are instructed that the witness Ella Clay is an accomplice. Now you can not convict the defendant upon her testimony alone, unless you first believe that her testimony is true and shows that the defendant is guilty of the offense charged; and then you can not convict the defendant upon said testimony, unless you further believe that there is other testimony in the case corroborative of the testimony of said Ella Clay, and tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of the offense charged and of the act of intercourse.

"If you believe from the evidence that the defendant had carnal knowledge of the witness Ella Clay, if he did so, but that she was not seduced and induced to yield to such carnal intercourse by reason of a promise of marriage made by the defendant to her, but was induced to

so yield to such carnal intercourse by her own amorous passion, or by some other consideration, then you would find the defendant not guilty.

"You are further charged that should you believe from the evidence that prior to having the first act of intercourse with the defendant, if she did have such act of intercourse, the said Ella Clay then knew that the defendant was a married man and not divorced from his wife, then in such case, you would acquit the defendant."

The only complaint of this charge is that it did not specifically charge the jury that the prosecutrix must be corroborated as to the alleged promise of marriage. Appellant also presented two special charges in which he requested the court to charge the jury, "that the alleged promise of marriage is an essential part of this offense, and unless her testimony has been corroborated by other testimony than her own as to said alleged promise of marriage, they would acquit appellant." To the refusal of the court to give these two charges appellant also complains in his bill of exceptions. There is some conflict in our decisions on the question here presented, but as in recent years the charge as given has been so often approved, we hardly deem it necessary to discuss it, and would not do so but for the earnest insistence of appellant's counsel. In the case of Campbell v. State, 57 Texas Crim. Rep., 301, a seduction case, this court, in an opinion by Judge Ramsey, which met the approval of all the judges, seemingly, laid down a form of charge on accomplice testimony in this character of case, and the trial court followed this charge almost literally in this case. The form as laid down by the court in the Campbell case is as follows, the court saying:

"We think in a case like this where, under the law, the witness is an accomplice, that the following form of charge should be given, and same is hereby, in terms, approved as a correct charge:

"'I instruct you that the witness...........is an accomplice. Now, you can not convict the defendant upon his testimony alone unless you first believe that his testimony is true and connects the defendant with the offense charged, and then you can not convict the defendant upon said testimony unless you further believe that there is other testimony in the case corroborative of the accomplice's testimony tending to connect the defendant with the offense charged; and the corroboration is not sufficient if it merely shows the commission of the offense charged.'

"We have also approved charges on this subject in the recent cases, decided at the present term, of King v. State, from Tom Green County, and Brown v. State, from Kaufman County."

The King case will be found reported in 57 Texas Crim. Rep., 363, and the Brown case in the same volume on page 570. Many other cases could be cited specifically approving this form of charge. The contention has often been made that the jury must be instructed that the accomplice must be corroborated upon every material issue in the case, but such was not the rule at common law, and no such rule has been prescribed by our Code of Criminal Procedure. The only requirement by the Code is that the evidence of the seduced person or accomplice

must be corroborated as to facts *tending to connect the defendant* with the offense charged. Arts. 789 and 801, Code of Criminal Procedure.

At common law it was held that a conviction might be had upon the uncorroborated testimony of an accomplice. This is evidenced by the decisions in several of the famous State trials. But the rule that more recently prevailed at common law was, that while a conviction might be had upon the uncorroborated testimony of an accomplice, yet it was customary for the trial judges (who were permitted to comment on the evidence) to advise a jury not to convict unless the testimony of the accomplice was corroborated by other testimony or circumstances in the case, the rule there finally resolving itself as stated by Judge Garrow, in Tidd's trial (33 How. St. Tr., 1483) in his charge to the jury: "It may not be unfit to observe to you here that the confirmation to be derived to an accomplice is not a repetition by others of the whole story of the accomplice and a confirmation of every part of it; that would be either impossible or unnecessary and absurd; . . . and therefore you are to look to the circumstances to see whether there are such a number of important facts confirmed as to give you reason to be persuaded that the main body of the story is correct. . . . You are, each of you, to ask yourselves this question: Now that I have heard the accomplice and have heard other circumstances which are said to confirm the story he has told, does he appear to me to be so confirmed by unimpeachable evidence, as to some of the persons affected by his story or with respect to some of the facts stated by him, as to afford me good ground to believe that he also speaks the truth with regard to other prisoners or other facts, with regard to which there may be no confirmation? Do I, upon the whole, feel convinced in my conscience that his evidence is true and such as I may safely act upon?"

Under our Code a judge was prohibited from commenting upon the weight of any testimony given on a trial, and under such conditions it was provided by the Code that a judge in his charge as a matter of law should instruct the jury that a conviction could not be had upon the testimony of an accomplice, unless corroborated by other evidence, and to the common law was added that there must be other evidence tending to connect the defendant with the offense committed, but it was never intended by this provision of the Code that the corroboration must extend to every part of the accomplice's evidence, because if such was the rule there would be no necessity or occasion to offer the accomplice as a witness if his testimony could be completely proven by other evidence.

This court in the case of Myers v. State, 7 Texas Crim. App., 640. p. 659, held: "The authorities are not agreed as to the amount and extent of corroboration required in order to warrant a conviction on the testimony of an accomplice, who, in the sense of a witness, is any direct participant in the crime, but with this we need have no concern, for the reason that the statute has settled it by declaring the extent of corroboration necessary. It is 'other evidence tending to connect the defendant with the offense committed.' We do not understand that this requires the different matters testified to by the accomplice are to be

supported, each one, by other testimony to the same isolated facts, but that it must tend to connect the defendant with the offense committed."

In the case of Nourse v. State, 2 Texas Crim. App., 317, this court held: "It will be seen that to justify a conviction on the testimony of an accomplice, there must be some evidence which, of itself and without the testimony of the accomplice, tends in some degree to connect the accused with the commission of the crime. The Supreme Court of California (39 Cal., 614) say: 'The corroborative evidence may be slight and entitled to but little consideration, nevertheless the requirements of the statute are fully fulfilled if there be corroborative evidence which of itself *tends to connect* the accused with the commission of the offense.' This decision was rendered under a statute similar to ours in regard to corroboration necessary to be had to the testimony of an accomplice to support a conviction. It is a *mistaken idea* to suppose that the corroborating evidence must conclusively of itself connect the defendant with the commission of the offense."

In the case of Jones v. State, 4 Texas Crim. App., 530, it was held: "As we construe that provision of the statute, the corroborating evidence must, of itself, and without the aid of the testimony of the accomplice, tend, in some degree, to connect the defendant with the commission of the offense. It need not, of course, be sufficient to establish his guilt, for, in that event, the testimony of the accomplice would not be needed."

According to Hoyle's case (4 Texas Crim. App., 245) if the corroboration tends to connect the defendant with the commission of the offense, then it is sufficient; and it would serve no good purpose or tend to enlighten the jury to tell them that the accomplice must be corroborated in his statements in any material matter."

In the case of Wright v. State, 31 Texas Crim. Rep., 354, it was held: "Corroborative evidence on a trial for seduction need not be direct or positive, or such evidence as is sufficient to convict the defendant independent of that of the prosecutrix, but simply such facts or circumstances as tend to support her testimony and satisfy the jury that she is worthy of credit."

It has often been contended that to sustain a conviction for seduction, as the law requires, that the female must be under twenty-five years of age, that there must be a promise of marriage, and an act of intercourse to constitute seduction, the court must specifically instruct the jury that the accomplice or injured female must be corroborated as to all of these matters. In the case of Williams v. State, 59 Texas Crim. Rep., 347, in which case it was contended that as the girl was not corroborated in her statement that she was under twenty-five years of age, the conviction should not be sustained, Judge McCord, for the court, held: "It is insisted before this court that because there was no testimony corroborating her upon this point, therefore the conviction can not stand. We do not agree to this contention. All crimes have in them different issues and different elements that are required to be proved in order to sustain a conviction. The statute is general that the accomplice must be corroborated by other testimony tending to connect the

defendant with the commission of the offense. The statute does not say in what this corroboration shall consist. If the testimony other than that of the accomplice should make out a complete offense it would not be necessary to use the accomplice's testimony. Hence the law has wisely provided that the corroboration must tend to connect the defendant with the commission of the offense, and to require that every constituent element of the offense as sworn to by the accomplice must be corroborated, would be requiring of the State an impossibility. We therefore hold that this contention of appellant is without merit." See also Nash v. State, 61 Texas Crim. Rep., 259, 134 S. W. Rep., 709; Murphy v. State, 65 Texas Crim. Rep., 55, 143 S. W. Rep., 616; Bost v. State, 64 Texas Crim. Rep., 464, 144 S. W. Rep., 589; Curry v. State, 68 Texas Crim. Rep., 262, 151 S. W. Rep., 319; Gillespie v. State, 73 Texas Crim. Rep., 585, 166 S. W. Rep., 139; De Rossett v. State, 74 Texas Crim. Rep., 245, 168 S. W. Rep., 531, and cases cited in these opinions.

In this case the injured female testified: "My name is Ella Clay. I am twenty-four years old now at this time. In the year 1911 I was twenty-one years old. I know the defendant, Charlie Slaughter. I have known him since October, 1911. No, I have known him since 1910. I am single. I have never been married. When I met the defendant I was living at the Hackley house. I met him there. I had sexual intercourse with him. The first time I ever had sexual intercourse with him was in March, 1911, out here at the ball park. No one was out there with me but him. It was at night time. I had intercourse with Charlie Slaughter because I loved him, and he promised to marry me and I relied on that promise. We were engaged to be married. We were first engaged to be married in January, 1911. When we first became engaged I was working at the Crown Boarding House. He was boarding there at that time. Mrs. Holder was running the boarding house at that time. I had been going with him since October, before, up to the time we became engaged. We were together as much as two or three times a week. The first time he ever asked me to submit to his sexual embrace was in March. At that time we had been engaged since January. It was in March that we had our intercourse. At the time we had this intercourse there was something said about us being engaged. He said we would marry that fall, but we did not have the date set. We did not have any date set, but we were to marry that fall. I permitted him to have intercourse with me because I relied upon his promise of marriage. There is no other reason for which I submitted to his having sexual intercourse with me. I loved him. He had intercourse with me several times after that. I don't know just how many times. We had intercourse at the same place—at the ball park. At these subsequent times when he had intercourse with me we talked about our relationship and about our engagement. He said he would marry me and he would carry out his promise. I relied upon that promise. He has never married me. As a result of that copulation there was a child born to me; one baby.

"During this time I was keeping company with him I did not keep company with anyone else at that time. I kept company exclusively with Charlie Slaughter. As to why I was keeping company exclusively with him, I didn't have any other company and didn't want any other company, and I was engaged to him and I didn't think I should be going with other parties. I didn't want to go with anybody else. When I received his company most of the time, it was there at the boarding house. Mr. and Mrs. Cloe were the proprietors at that time, of the boarding house. He was boarding there and we went to the shows and to church very frequently. He took me out as much as twice a week, and sometimes two or three times a week.

"These acts of intercourse occurred in Taylor County, Texas, right here in Abilene. My baby will be three years old in December." It is thus seen that her testimony makes a clear case of seduction.

Appellant testified and admitted the sexual intercourse, but denied any promise of marriage. While there is no direct proof of a promise of marriage, yet the facts and circumstances testified to by the witnesses would amply corroborate prosecutrix on this point. It is shown that Miss Clay was first at the Hackley house in Abilene and she there met appellant. That she changed her place of abode and went to the Crown Boarding House. Appellant at once changed his place of stopping and also went to the Crown Boarding House. Miss Clay went to Anson and so did appellant; she returned to the Crown Boarding House at Abilene, and so did appellant. Frank Wasson testified that he also boarded at the Crown Boarding House, and that "he saw appellant and Miss Clay together nearly every night." Mrs. Cloe testified: "I am not in any way related to Miss Ella Clay. I know the defendant, Charlie Slaughter. I have known him about three and a half years, I guess. Me and my husband ran the Crown Hotel here in the early part of 1911, in Abilene. Miss Clay was staying at our house at that time. The defendant boarded at our house at that time. He boarded there three or four months. During that time I saw the defendant keep company with Miss Clay about once or twice a week. I never did see him, though, with any other young lady. I never did know of her going with any other young man at the time the defendant was going with her." This witness also testified that after the arrest of appellant, and he was brought back to Abilene, appellant went to see her and asked her to go to Miss Clay and get her to leave town and not appear against him; that he told her she could go to his lawyer, and he would tell her how to talk to Miss Clay, how Miss Clay could get away, and what she was to say. That he wanted her to get Miss Clay and get her to go to his lawyer and sign some kind of papers, but she declined to do so. Other facts and circumstances are testified to; also the flight of appellant when Miss Clay went to him and told him her condition, and demanded that he carry out the promise to marry her. Miss Clay admits that appellant told her at this time he was a married man, but she says this was the first time she ever heard it. Appellant introduces testimony tending to show that Miss Clay knew he was a married man

prior to the time the act or acts of intercourse took place. The court submitted that issue to the jury and they found against appellant, and the record shows he had not lived with his wife for twelve years, and she had never been at Abilene, nor in Taylor County.

We are convinced that the prosecutrix's testimony is sufficiently corroborated, and there being no error in the record, the judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—I dissent. May write later. I believe the plain definition of the offense contained in the statute ought to control this court.

DAVIDSON, JUDGE (dissenting).—At the time of the rendition of this opinion I entered my dissent to the affirmance. I have reviewed the case again in the light of the motion for rehearing and the action of the court overruling it.

With reference to accomplice testimony the court gave the following charge: "You are instructed that the witness Ella Clay is an accomplice. Now you can not convict the defendant upon her testimony alone, unless you first believe that her testimony is true and shows that the defendant is guilty of the offense charged; and then you can not convict the defendant upon said testimony, unless you further believe that there is other testimony in the case corroborative of the testimony of said Ella Clay, and tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of the offense charged and of the act of intercourse." It will be noted that this charge is in the general form and does not apply the law to the case, except it requires corroboration of the act of intercourse. It omits to charge the jury that her corroboration must be by independent testimony and must show or tend to show a promise of marriage. The charge would have been better for the defendant if the last clause had been omitted, towit: "and of the act of intercourse." There was no question of the intercourse between the parties. The issue between the defendant and the State was as to the promise of marriage. Appellant admitted the intercourse, but placed it on the ground that it was not induced by any promise of marriage. Exception was reserved to this charge on the ground that it omits and fails to charge the jury affirmatively that the prosecutrix's testimony should be corroborated as to the promise of marriage, and requested the court to give special charges Nos. 1 and 2 referred to and made a part of the exception to the charge; and also objects to the court's charge on corroboration of the evidence of Ella Clay and says the same is too general and does not apply the law to the facts. It is the universal rule that an accomplice can not corroborate himself. The corroboration must come from sources independent of the accomplice. To meet this appellant requested as part of the law of the case, that the jury be informed "that unless you believe from the evidence beyond a reasonable doubt that

the prosecuting witness, Ella Clay, is corroborated outside of her own testimony as to the alleged promise of marriage it will be your duty to acquit the defendant in this case and say by your verdict not guilty." Another charge was asked, which was refused, "that it is not sufficient that the prosecuting witness, Ella Clay, be corroborated alone as to the act of sexual intercourse, but you are charged that the alleged promise of marriage is an essential part of this offense and unless the said Ella Clay has been corroborated with other evidence than her own as to said alleged promise of marriage, if any, then in that event you will acquit the defendant." These charges were refused. The judge signing the refusal says these charges were given in the general charge and for that reason refused. I do not find this charge given by the court. In fact, I quoted above the general charge given by the court. Under all the authorities it is necessary that the prosecutrix be corroborated at least as to two facts, first, promise of marriage, and, second, the illicit intercourse. It takes at least these two things to constitute seduction. This is so by the statute, and by all the authorities that have been called to my attention. It would seem unnecessary at this late date to collate them. There are a number of cases which hold that this charge should be given. There has been a tendency by recent decisions to hold that it was not necessary to so charge, but none of these cases that I have observed holds otherwise than it is necessary to corroborate the accomplice on these propositions. Some of them intimate that it may not be necessary to charge specifically a corroboration as to promise of marriage and intercourse. The court did, however, in this case, select out the act of intercourse and charge specifically upon that, but did not inform the jury that the prosecutrix must be corroborated as to the promise of marriage. This would intensify the reason why the charge should have informed the jury that she must be corroborated as to the promise of marriage. It has always been held that it is error not to give the charge when requested. Barnard v. State, 76 S. W. Rep., 475; Keaton v. State, 83 S. W. Rep., 911. It is unnecessary to go further with this matter. Appellant availed himself of all the technical rules with reference to exception, and not only excepted to the court's charge at the proper time and requested special instructions, but embodied in his exceptions the refusal to give the special instructions. This error was conceded by the Assistant Attorney General, and appellant not only reserved his exceptions in this way but embodied them in bills of exception. So there was no question of the fact these matters are presented for review.

There was some testimony admitted which I think was erroneous, but I do not purpose to enter into a discussion of that matter. I am, therefore, of opinion this judgment ought to have been reversed, and the jury instructed as to the law of the case upon another trial. The defendant certainly is entitled to have the law administered as found in the definition of the offense, and especially when he did everything within his power to see that the law was presented in the charges.

I therefore respectfully enter my dissent.