FURR v. STATE.   (No. 4423.)

(Court of Criminal Appeals of Texas.   March 28, 1917.   Rehearing Denied April 18, 1917.)

1. SEDUCTION ⟨⟩50(1) — INSTRUCTION—DEFINITION.

In a prosecution for abandonment after seduction and marriage, the charge that seduction, as used in Pen. Code 1911, art. 1450, denouncing the offense, meant to lead an unmarried female under 25 years of age away from the path of virtue, and that the offense is not complete until the female has been seduced, that is, corrupted, deceived, drawn aside from the path of virtue, which she was pursuing, was correct.

[Ed. Note.—For other cases, see Seduction, Cent. Dig. § 89.

For other definitions, see Words and Phrases, First and Second Series, Seduce; Seduction.]

2. HUSBAND AND WIFE ⟨⟩302 — ABANDONMENT OF WIFE AFTER SEDUCTION AND MARRIAGE — COMMENCEMENT OF PROSECUTION—STATUTE.

Filing of a complaint for seduction before a justice of the peace, and issuance of a warrant for defendant's arrest thereunder, if defendant was informed or had knowledge thereof prior to his marriage to the prosecuting witness, constituted commencement of a prosecution against him for seduction within Pen. Code 1911, art. 1450.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1100.]

3. CRIMINAL LAW ⟨⟩1091(14) — APPEAL — BILLS OF EXCEPTIONS.

Defendant's objections to the court's charge should be preserved by separate bills to each objection to any paragraph, and not by being grouped all together in one paper.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2823, 2824.]

4. HUSBAND AND WIFE ⟨⟩313 — ABANDONMENT OF WIFE AFTER SEDUCTION AND MARRIAGE—EVIDENCE—CORROBORATION OF PROSECUTRIX—FLIGHT.

Defendant's flight, when a prosecution for seduction was instituted against him, corroborated prosecutrix in his prosecution for abandonment after seduction and marriage as to his promise to marry her as the inducing cause of their relations.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1110.]

5. HUSBAND AND WIFE ⟨⟩313 — ABANDONMENT OF WIFE AFTER SEDUCTION AND MARRIAGE—EVIDENCE—CORROBORATION OF PROSECUTRIX—MARRIAGE.

In a prosecution for abandonment after seduction and marriage, the marriage itself was corroboration of prosecutrix's testimony as to defendant's promise to marry her as the inducing cause of their relations.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1110.]

6. HUSBAND AND WIFE ⟨⟩313 — WITNESSES ⟨⟩61(2)—EVIDENCE — ABANDONMENT AFTER SEDUCTION AND MARRIAGE—CORROBORATION OF PROSECUTRIX—COMPETENCY OF WIFE.

Under Pen. Code 1911, art. 1450, denouncing the offense of abandonment after seduction and marriage, the wife or female is competent to testify against defendant just as any other witness could, and it is unnecessary to corroborate her at all, as is required by the statute on the offense of seduction; the two offenses being separate and distinct.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1110; Witnesses, Cent. Dig. § 163.]

7. CRIMINAL LAW ⟨⟩829(12) — TRIAL—INSTRUCTIONS — ABANDONMENT AFTER SEDUCTION AND MARRIAGE.

In a prosecution for abandonment after seduction and marriage, the court was not in error in failing to charge separately that it was necessary to corroborate prosecutrix as to the promise of marriage.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011.]

8. CRIMINAL LAW ⟨⟩1038(1)—APPEAL—RESERVATION OF GROUNDS OF REVIEW—OBJECTION TO CHARGE.

Under Code Cr. Proc. 1911, art. 735, amended by Acts 33d Leg. c. 138 (Vernon's Ann. Code Cr. Proc. 1916, art. 735), requiring the trial judge to submit his charge to defendant or his attorney, where the court so submitted the charge, and defendant made no objection because of the omission of the expression "beyond a reasonable doubt" in a paragraph submitting the case, defendant could not object on appeal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2646.]

9. CRIMINAL LAW ⟨⟩823(15) — TRIAL — INSTRUCTION.

Though the court inadvertently omitted the expression "beyond a reasonable doubt" from a paragraph of his charge submitting the case, where, in another paragraph, he charged the reasonable doubt, and applied it to the whole case, that was sufficient.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1992–1994, 3158.]

10. WITNESSES ⟨⟩361(1) — IMPEACHMENT—GENERAL REPUTATION FOR TRUTH AND VERACITY.

In a prosecution for abandonment after seduction and marriage, where defendant, on cross-examination of prosecutrix, sought to impeach her, and, by his examination, to show that she was testifying falsely from an improper motive, and that her testimony in some particulars was recently manufactured, and followed up such attacks by introducing and having several witnesses testify in direct impeachment of her testimony as to her conduct in particular instances, the state was entitled to prove that prosecutrix's general reputation for truth and veracity was good.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1167, 1171–1175.]

11. CRIMINAL LAW ⟨⟩721½(2)—TRIAL—ARGUMENT OF COUNSEL—COMMENT ON FAILURE TO CALL WITNESS.

When accused fails to introduce an available witness who would testify in his favor, it is a

legitimate deduction against him, and can be argued against him before the jury.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1673.]

12. CRIMINAL LAW ⬡➡722(2) — TRIAL—ARGUMENT OF COUNSEL.

In a prosecution for abandonment after seduction and marriage, the district attorney's remark in argument that defendant stole the virtue and destroyed the happiness of prosecutrix was legitimate.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1674.]

13. CRIMINAL LAW ⬡➡724(1)—TRIAL—ARGUMENT OF COUNSEL.

In such prosecution, it was improper for the district attorney to call the defendant an infernal scoundrel.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1679.]

14. CRIMINAL LAW ⬡➡730(15)—TRIAL—ARGUMENT OF COUNSEL.

In such prosecution, where the court properly told the jury not to consider the remark, and withdraw it from their consideration, the error was harmless.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1693.]

Appeal from District Court, Wilson County; F. G. Chambliss, Judge.

Sam Furr was convicted of crime, and he appeals. Affirmed.

J. E. Canfield, of Floresville, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

PRENDERGAST, J. Appellant was convicted of abandonment after seduction and marriage, and his punishment assessed at three years in the penitentiary.

At the time of the alleged seduction appellant was just past 21 years of age, and the prosecutrix, his wife, then an unmarried woman, was about 9 months older than he. The first act of intercourse between them, as both testified, was about July 23, 1916. She testified, and was corroborated by him and other witnesses too, in effect, that he practically alone waited on her for about 9 months continuously and often just prior to the time of said act, and that he took her back and forth to church and the various social functions in the neighborhood during all this time. He swore:

"The way I came to going with her is, she acted as she wanted to be a sweetheart to me, and of course I accepted it; she asked me if I would be her sweetheart, and I told her, 'Yes.'"

She swore, and so did he, that the first time he had sexual intercourse with her was at her home when she was alone there, the balance of her family being away attending a baptism, and he knew she was there alone; that she had no engagement with him to come there on that occasion, but he learned at the baptism that she was not there, and he went to her home and thus found her alone; that after he reached her home on that occasion he stayed there several hours;

that they both sat on the bed, and that he persuaded her for a good while, about a half an hour, to have intercourse with him before she submitted to him. He himself testified that he sat on the bed with her 10, 15, or 20 minutes before she consented to the act, and that he asked her two or three times, might have asked her more—he never counted them —before she yielded to him. She swore positively that the reason she submitted to his embraces was on a promise by him to her to marry her, and that that was the sole cause of her submitting to him; that she would not have submitted to his embraces under any other circumstances; that he promised her right then and there before the act that he would marry her before she ever submitted to his desire, and that she accepted at the time his proposal to marry her. He denied that he promised to marry her. She swore, however, that during all this time he was begging her to submit to him, he was not caressing nor kissing her, and his arms were not around her, but by his side. On cross-examination she said that after the first act they had intercourse two or three times later; that she did not remember his exact words when he promised to marry her, but he told her if she would "come across" he would marry her.

The result of this sexual intercourse was that she became pregnant by him, and at the time of the trial, on January 1, 1917, she was then about five months "in a family way." She was corroborated in this by the testimony of other witnesses. He also learned of it, doubtless through her, and he thereupon fled. On October 18, 1916, she filed a sworn complaint against him before the justice of the peace of the precinct where they lived, and charged him therein with her seduction. A warrant was at once issued by the justice of the peace for his arrest and placed in the proper officers' hands. They sought for him, not only in that county, but in others, trying to arrest him under the warrant, but he succeeded in avoiding them. On October 25th he sent word to her by one of her cousins that he would marry her, and on that date he secured from the county clerk a proper license for their marriage, and was then and there married to her. He and she both testified that she offered and wanted to live with him as his wife and to make him a good and true wife; that he immediately abandoned her and refused to live with her or to have anything further to do with her; that his abandonment of her and refusal to live with her was without any fault on her part. She swore positively that no man other than appellant at any time had ever had sexual intercourse with her.

The state proved by Mr. Andrews, a disinterested witness, that when appellant was preparing to flee the country, or was then fleeing, he came to his field where he was

hoeing and, without that witness asking him anything about it, appellant told him that he had seduced the prosecutrix, and that he would either have to marry her or leave the country; that he had heard she was "in a family way," and that was the reason he would have to leave the country or marry her; that he asked him if he knew anything about what the law was, and the witness told him he did not. The witness said:

"When I asked him if he was guilty, he said he guessed he was; he had seduced her all right."

The witness said:

"He never went into any discussion of promising to marry her; he never discussed that at all."

Appellant did not deny the testimony of this witness.

After all the evidence was in, the court turned over to appellant and his attorney the charge which he had prepared. Appellant thereupon objected to different paragraphs of it, and requested a number of special charges. We cannot tell what the court's charge was when thus turned over to appellant and his attorney. It is certain, however, judging by the exceptions and the charge as now found in the record, that the court must have made changes therein, and he gave one of appellant's special charges to meet one of his objections. With this special charge given, the court's charge now in the record is a full, clear, and apt charge, covering every feature of the case which was either necessary or proper to be embraced in the charge. By it he told the jury correctly the offense the indictment charged against appellant, and that he pleaded not guilty thereto. In one paragraph he quoted substantially, if not literally, the statute (article 1450, P. C.), prescribing the offense charged.

[1] In another paragraph he instructed the jury:

"You are instructed that 'seduction,' as used in the statute, means to lead an unmarried female under 25 years of age away from the path of virtue; to entice or persuade her by means of a promise of marriage to surrender her chastity, and have carnal intercourse with the man making the promise. The promise of marriage by the man, and the yielding of her virtue in consideration of that promise, constitute the gist of the offense. The offense is not complete until the female has been seduced, that is, corrupted, deceived, drawn aside from the path of virtue, which she was pursuing."

This charge has uniformly and in a large number of cases been approved as correct. Hinman v. State, 59 Tex. Cr. R. 29, 127 S. W. 221; Browning v. State, 64 Tex. Cr. R. 148, 142 S. W. 1; Bost v. State, 64 Tex. Cr. R. 475, 144 S. W. 589; Knight v. State, 64 Tex. Cr. R. 541, 144 S. W. 967; Bush v. State, 71 Tex. Cr. R. 14, 157 S. W. 944, and other cases; 2 Branch's Ann. P. C. p. 1461. It is also substantially in compliance with what is held in the case of Putnam v. State, 29 Tex. App. 454, 16 S. W. 97, 25 Am. St. Rep. 738, and Spenrath v. State, 48 S. W. 193, and subsequent cases.

[2] In another paragraph he instructed the jury that the filing of the complaint for seduction before a justice of the peace and the issuance of a warrant for arrest thereunder, if appellant was informed or had knowledge thereof prior to his marriage to the prosecuting witness, would constitute a commencement of a prosecution against him for seduction. This was specifically held to be the law by this court in Baskins v. State, 75 Tex. Cr. R. 537, 171 S. W. 723.

In another paragraph he told the jury that a woman who had theretofore had carnal knowledge of or sexual intercourse with a man was not a subject of seduction, and if they believed from the evidence that the prosecuting witness, his wife, was or had been guilty of carnal knowledge of or sexual intercourse with any man or men prior to the time he promised to marry her, if he did, and his sexual intercourse with her was by virtue of such promise, if any, to find him not guilty.

Then, in another paragraph, he told the jury that his said wife was an accomplice, and then gave literally the charge on that subject and the necessity of corroborating her, as expressly laid down by this court in Campbell v. State, 57 Tex. Cr. R. 302, 123 S. W. 583, which charge has repeatedly been held correct by many cases subsequent thereto. It is unnecessary to collate them.

In another paragraph the court submitted the case to the jury for a finding, and required them to believe from the evidence every essential which was made necessary or proper by the statute for them to believe before they could find him guilty, and if they believed all these facts, then to find him guilty and assess his punishment as prescribed by the statute.

In another paragraph he charged as follows:

"In all criminal cases the burden of proof is on the state. The defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt; and in case you have reasonable doubt as to the defendant's guilt, you will acquit him and say by your verdict 'not guilty.' "

[3] We have considered all of appellant's objections to the court's charge, notwithstanding they are all together in one paper and not, as is necessary, preserved by separate bills to each objection to any paragraph only; and, in our opinion, none of them present any error. We have also considered all of his special charges, and other than the one which the court did give none of them should have been given. It is unnecessary to state these objections and special charges separately. We will discuss some of the questions attempted to be raised thereby.

Appellant contends that the evidence was wholly insufficient to show seduction, but that it shows only a bargain and sale, the surrender of her person to appellant for a bald promise of marriage. No doubt this contention was urged before the jury with

all the force of appellant's able attorney. The testimony as a whole clearly authorized the jury to believe and find, as it did, that the evidence was sufficient to show seduction, and was not a mere arrangement of bargain and sale. Of course, the facts of each case must govern in this particular, and no two cases would probably be exactly alike, but there are many decisions where the facts were no stronger or more pertinent to show seduction than the facts in this case are, and this court has all the time sustained such verdicts. See cases collated in 1 Vernon's Ann. Crim. Stats. p. 936. There are many other cases also.

[4, 5] Appellant also contends that his wife, prosecutrix, was not corroborated as to his promise to marry her as the inducing cause for her to yield her person to him. His contention cannot be sustained. Even if she had to be corroborated at all, the evidence greatly preponderated against him on this point. His flight of itself would be corroborative evidence, but, in addition to this, at the time of his flight, he specifically stated to Mr. Andrews that he had seduced the prosecutrix, and when Mr. Andrews asked him if he was guilty, he said he guessed he was; he had seduced her all right. In addition, after the prosecution was begun against him for seduction, and to avoid conviction for seduction, he married the prosecutrix. This of itself has been held by this court as a virtual admission of his promise to marry prosecutrix; at least a circumstance tending strongly to so corroborate the prosecutrix. James v. State, 74 Tex. Cr. R. 141, 167 S. W. 727.

[6] The statute prescribing the offense of abandonment after seduction and marriage (article 1450, P. C.) expressly enacts that the said marriage of the prosecutrix with the accused in this offense—

"shall be no bar to the qualifications of said female to testify against the defendant; and the female so seduced and subsequently married and abandoned, as herein provided, shall be a competent witness against said defendant."

This writer thinks it clear from this statute that the Legislature intended that the wife, female, should be competent to testify against the appellant in this offense just as any other witness could, and that it was unnecessary in this offense to corroborate her at all such as is required by the statute on the offense of seduction. This offense is a separate and distinct offense from seduction. This court has held this under a similar statute on the offense of pandering, and they are applicable hereto. Jones v. State, 72 Tex. Cr. R. 496, 162 S. W. 1142; Smith v. State, 73 Tex. Cr. R. 129, 164 S. W. 825.

[7] Appellant further contends that the court should have charged separately that it was necessary to corroborate the prosecutrix as to the promise of marriage. This was clearly embraced in the charge of the court submitting the case to the jury for a finding, and was required to be believed by the jury as well as all the other requisites to show seduction before they could convict. This question has also repeatedly and specifically been held against appellant by this court. Slaughter v. State, 76 Tex. Cr. R. 162 et seq., 174 S. W. 580, where the authorities are cited and discussed. It is unnecessary to again collate them or discuss the question.

[8, 9] Appellant also complains that in that paragraph of the court's charge submitting the case he omitted to tell the jury therein that they must believe from the evidence beyond a reasonable doubt, etc., omitting therein "beyond a reasonable doubt." Doubtless the court inadvertently omitted this, but, as stated above, he submitted his charge to appellant as required by the statute, and he made no objection whatever to the court's charge at the time because of that omission, and, so far as the record shows, did not at the time in any way call the court's attention thereto. The very object of the Legislature and the law in amending article 735 and others, C. C. P., by the act of April 5, 1913, p. 278 (Vernon's Ann. Code Cr. Proc. 1916, art. 735), in requiring the judge to submit his charge to the appellant or his attorney, was that such matters should be then and there called to the attention of the court, and unless it is then called to his attention, it is too late later to make such objections. Moreover, as shown above, the court in his charge, in another paragraph, charged the reasonable doubt and applied it to the whole case. This court in a number of decisions has held expressly that this was all that was essential. Conger v. State, 63 Tex. Cr. R. 336, 140 S. W. 1112, and cases there cited; Wysong v. State, 66 Tex. Cr. R. 205, 146 S. W. 941, and cases there cited; Hutto v. State, 7 Tex. App. 48; McCall v. State, 14 Tex. App. 363; Ashlock v. State, 16 Tex. App. 23; McCullough v. State, 23 Tex. App. 636, 5 S. W. 175; Powell v. State, 28 Tex. App. 398, 13 S. W. 599; McCay v. State, 32 Tex. Cr. R. 238, 22 S. W. 974; Cockerell v. State, 32 Tex. Cr. R. 593, 25 S. W. 421, and cases there cited; Little v. State, 39 Tex. Cr. R. 661, 47 S. W. 984.

In cross-examination of prosecutrix, his wife, appellant sought to impeach her, and by his examination of her in substance and effect attempted to show that she was testifying falsely from an improper motive, and that her testimony in some particulars was recently manufactured. Then, in introducing his evidence he followed up his said attacks on her by introducing and having several witnesses testify, and in one instance himself testifying, in direct impeachment of her. Some of these will be mentioned.

He asked her, fixing the time as nearly 2 years before, and the place, if she was not in a buggy with Orin Little and stopped in a certain pasture, when one of the Higgins boys whistled, and she said to Little: "That is the Higgins boy watching us." She de-

nied this. He introduced the Higgins boy, who swore that this occurred.

Again, fixing the time and place, he asked her if she was not out in the lane on a certain road in the night in her nightclothes when one Garner came along, and she asked if that was Sam, the clear implication being that she was out at this place at this time to meet Sam for improper purposes. She denied all this. He thereupon in impeachment of her had a witness to testify that this did occur.

Again, he asked her, fixing the time and place, if she was not out one night in a buggy with said Little when at a certain location the buggy was stopped, she sitting on the seat and Little down on his knees in front of her having sexual intercourse with her, when she was caught in this attitude by another party. She denied all this. He then put a witness on the stand, who testified in effect that he saw her and Little on said occasion in said compromising attitude.

Again, he asked her if on another occasion, fixing the time and place at her own house, if she was not lying on the bed with a certain man when a certain other party came up and saw them, and that she and the other man then jumped up. She denied all this. He introduced a witness, who testified that he saw her in this attitude with said man at the time.

Other instances could also be mentioned.

[10] Under such circumstances it has always been held by this court in a large number of cases that the party whose witness is thus impeached can prove such witness' general reputation for truth and veracity to be good. In this instance, therefore, the court did not err in permitting the state to prove by some 11 witnesses that they knew his wife, the prosecutrix's, reputation for truth and veracity, and that it was good.

[11] Appellant has a very meager bill, stating that on the trial, over his objections, the state was permitted to introduce in evidence his motion for a continuance. His objections were that it was irrelevant and immaterial, throwing no light on any issue in the case, and was calculated to inflame and prejudice the minds of the jury against him. This is the substance in full of his bill. It in no way discloses what his motion for a continuance contained, and from it nothing of its contents is shown. This of itself is sufficient to show that this bill presents no error. The motion for a continuance nowhere appears in the record except in the statement of facts. If we could look to this and the statement of facts on the subject, this state of fact would appear: When the case was called for trial, appellant made a motion for a continuance on account of the absence of his witness said Orin Little, and in it he swore that he expected to prove by

him that for several months during the spring and summer of 1915, and long prior to appellant's having sexual intercourse with the prosecuting witness, the said Little at frequent times during said months had sexual intercourse with her. While the case was being tried, the state proved that said witness Little was in attendance upon the court and in the witness room. Appellant did not introduce him and have him testify as he claimed he would. All the authorities are to the effect that when the accused fails to introduce an available witness who would testify in his favor, it is a legitimate deduction against him and can be argued against him before the jury. 5 A. & E. Enc. of Law and Prac. p. 333; 2 Standard Enc. of Proc. p. 773, where a large number of cases from the United States courts, Alabama, Georgia, Iowa, Kansas, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, North Carolina, Oregon, Texas, and Wisconsin, holding this, are cited; also Graves v. United States, 150 U. S. 118, 14 Sup. Ct. 40, 37 L. Ed. 1021. This has many times been held by this court. White's Ann. C. C. P., § 1052, subd. 8, where a considerable number of cases are collated; 1 Branch's Ann. P. C. p. 208. It is unnecessary to here collate all of these cases. So that, if we could consider this bill, it shows no error.

[12-14] Appellant has a bill complaining that the district attorney in the closing argument pointed his finger at appellant and said:

"You infernal scoundrel, you stole the virtue and destroyed the happiness of this girl"

—to which he objected. The court qualified the bill by stating that the court instructed the jury at once not to consider the remarks excepted to, and withdrew said remarks from their consideration. The latter part of the remark, that he stole the virtue and destroyed the happiness of this girl, was legitimate argument, based on the facts in evidence. Of course, it was improper for the district attorney to call appellant an infernal scoundrel, but as the court promptly told the jury not to consider said remarks and withdrew it from their consideration, this would not present error. Appellant at the time did not attach sufficient importance to it to even ask a written charge on the subject. Branch's Crim. Law, § 62, p. 32, and cases cited; Mooney v. State, 76 Tex. Cr. R. 549 et seq., 176 S. W. 52, and cases cited. In Jackson v. State, 56 Tex. Cr. R. 28, 117 S. W. 990, where the state's counsel in argument called the defendant, "This brute, this missing link in the chain of beings," and, the court instructed the jury not to consider it, this court held this presented no reversible error. A great many other cases could be cited to the same effect.

Nothing else is raised requiring discussion. The judgment is affirmed.