## HATTIE EDWARDS v. THE STATE.

### No. 471.   Decided February 23, 1910.

**1.—Assault to Murder—Argument of Counsel.**

On appeal, from a conviction of assault to murder, where the appellant complained of the argument of counsel for the State in announcing the law of assault to murder, and the records showed that both counsel for the State and the appellant had simply made a statement of the law as they understood it to be, there was no error, even if the same was inaccurate.

**2.—Same—Charge of Court—Self-Defense—Burden of Proof.**

Where, upon trial for assault to murder, the charge of the court on self-defense and burden of proof, while not happily expressed, did not shift the burden of proof from the State to the defendant, as complained, there was no error.

**3.—Same—Reasonable Doubt—Applied How.**

Where the doctrine of reasonable doubt is given in the charge of the court and applied to the whole case, it is not always essential that it should in terms be applied to every feature of the case raised by the testimony.

**4.—Same—Sufficiency of the Evidence.**

Where, upon trial for assault with intent to murder, the evidence sustained the conviction, the same will not be disturbed.

Appeal from the District Court of Fort Bend. Tried below before the Hon. Wells Thompson.

Appeal from a conviction of assault to murder; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Russell & Peareson,* for appellant.—On question of the court's charge on self-defense and burden of proof and reasonable doubt: Johnson v. State, 30 Texas Crim. App., 419, 17 S. W. Rep., 1070; Harris v. State, 55 Texas Crim. Rep., 469, 117 S. W. Rep., 839; Stanfield v. State, 43 Texas Crim. Rep., 10, 62 S. W. Rep., 917; Henderson v. State, 51 Texas Crim. Rep., 193, 101 S. W. Rep., 245; Stewart v. State, 51 Texas Crim. Rep., 223, 101 S. W. Rep., 800.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—By indictment filed in the District Court of Fort Bend County, on November 5, 1909, appellant was charged with

assault with intent to murder one Joe Smith. On November 15 thereafter she was found guilty as charged in the indictment and her punishment assessed at confinement in the penitentiary for a term of three years.

The statement of facts is very short. Prosecutor testified that in June of last year, about 12 o'clock at night, while lying on the bed next to the window that opened on the gallery at the house of his sister, Charity Anderson, appellant appeared at the window, cursed him and leaned in and cut him on the arm; that he rolled over to get out of the bed and she climbed in and cut him on the shoulder; that he ran in the next room and she tried to follow him but his sister came in with a pistol and kept her off of him. He testified further that the wounds were very severe and the one on the arm, which is across the elbow, was not at the time of the trial fully healed. The testimony of the witness Smith is fully corroborated by that of O. K. Davis, as well as appellant's sister, Charity Anderson. J. H. Stanley, introduced by the State, testified that he went to see Smith at his sister's solicitation and found him severely cut on the arm and back of the shoulder; that he was bleeding at a great rate, and he thought he would have bled to death had he not received assistance; that he had enough acquaintance with human anatomy and with knife wounds to be able to say that Smith was quite seriously cut; that he called a physician to wait on him; and also testified that a knife or any sharp instrument capable of making the wounds that Joe Smith had is a dangerous weapon and used in that manner would likely produce death. Appellant was the only witness introduced in her own behalf. Her testimony in its entirety is in these words: "After I got off the farm I stopped at Sugarland. I had left most of my clothes with Charity Anderson at Richmond and meant to go there some time soon and get them. The day defendant got out he came to my house at Sugarland and begged me to give him railroad fare to Richmond; that was twenty-five cents, but I gave him a dollar. He went up on the morning train and I went up in the afternoon. I saw him on the streets that evening and he tried to jump on me but people kept him off. He had beat me up before and had gone to the farm for it, and he had also gone to the farm for hitting Homer Kemp in the mouth with a piece of iron and knocked all her teeth out. He told me that evening I couldn't get my clothes, but I told him I left them with Charity and was going to get them. That night I went to Charity's house and knocked on the door but couldn't get an answer. I knocked two or three times but nobody answered, but I could hear them in there. I walked down the gallery to the window and there was Joe sitting up in the bed, and O. K. was in it, too, and Charity was standing right close up to it. Joe and Charity cursed me and I told them I wanted my clothes. Joe said for me to get away from there or he would kill me, and he commenced to slip his hand out to the side of the bed where Charity stood and she tried to hand him a

pistol that she had in her hand. I grabbed him and cut him. I did this to keep him from getting the pistol and shooting me, as I knew he would do if he got hold of it."

1. There is only one bill of exceptions in the record, which is to the effect, in substance, that the court erred in permitting the district attorney to argue to the jury that the way to tell whether or not defendant was guilty of assault with intent to murder was for them to determine whether if the assaulted party, Joe Smith, had died would the defendant have been guilty of murder; that the district attorney in this connection argued that the appellant was guilty of assault with intent to murder and not of an aggravated assault, because had Smith died she would have been guilty of murder, and that such test was infallible and the necessary criterion in determining the grade and degree of the offense. The bill further recites that in this connection counsel for appellant asked the following special charge, which the trial court refused to give: "Because if the injured party should die the offense might be murder, it does not necessarily follow that if he does not die the offense would be assault with intent to murder. It would not be assault with intent to murder unless the specific intent to kill existed in the mind of the defendant at the time." This bill is approved with the following qualification: "That Mr. Pearson, of counsel for the defendant, had announced the same proposition of law as is shown in the bill and the district attorney's remarks were commenting on the law as announced by Mr. Pearson and then proceeded further to expatiate upon the same as is shown in the bill." It is too obvious for discussion, in the light of the explanation, that there is no error in the court's action. Besides, we think the criterion stated by the district attorney was in every respect correct and that there was no error in his argument. Again, if it were true that the statement of the law by the district attorney, or his deductions from the facts were not logical or sound it would be a strange doctrine to hold that we would reverse a case because counsel for the State was inaccurate, either in their understanding or statement of the law of the case.

2. Again complaint is made of the charge of the court on the law of self-defense. We here copy this charge, together with the instructions given by the court with reference to reasonable doubt. The two paragraphs of the court's charge are found on the same page and are in these words: "Upon the law of self-defense you are further instructed that if from the acts of the said Joe Smith (if any), or from his words coupled with his acts (if any), there was created in the mind of the defendant a reasonable apprehension that she (the defendant) was in danger of losing her life or of suffering serious bodily harm at the hands of said Joe Smith, then the defendant had the right to defend herself from such danger or apparent danger as it reasonably appeared to her at the time, viewed from her standpoint. And a party so unlawfully attacked or about to be attacked is not bound to retreat in order to avoid the necessity of killing his assailant.

If you believe that the defendant committed the assault as a means of defense, believing at the time she did so (if she did do so) that she was in danger of losing her life or of serious bodily injury at the hands of said Joe Smith, then you will acquit the defendant.

"The defendant in a criminal case is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt; and in case you have a reasonable doubt as to the defendant's guilt you will acquit him, and say by your verdict 'Not guilty.' " The main criticism of the charge of the court is that the instruction given shifts the burden of proof and requires appellant to establish affirmatively the facts constituting her defense. We think that while not happily expressed that the charges of the court taken together are not subject to the objections made. It has been often held that where the doctrine of reasonable doubt is given in the charge of the court and applied to the whole case, that it is not always essential that it should in terms be applied to every feature of the case or fact raised by the testimony. The evidence, while conflicting, seems to us to be rather against the contention of appellant on her plea of self-defense, and in any event it must seem clear from the statement we have given that there was ample evidence in the record supporting the verdict. The judgment is affirmed.

*Affirmed.*