## Frank Richardson v. The State.

No. 6492.　Decided January 11, 1922.

Rehearing Granted March 22, 1922.

**1.—Murder—Evidence—Declarations of Defendant—Motive.**

On trial of murder, there was no error in admitting testimony that the defendant stated that he had appealed the forcible, entry and detainer case, shortly preceding the homicide; he having brought suit against the place in controversy. This was admissible on the issue of motive. Following McKinney v. State, 8 Texas Crim. App., 627.

**2.—Same—Evidence—Witness—Prejudice—Trial—Contradicting Witness.**

Where a witness who had given material testimony in favor of the defendant, was asked on cross-examination if he had not stated with reference to the deceased that the "son-of-a-bitch was dead and in hell where he ought to be" and when he denied the same proof was made for the purpose of impeaching him, that he did make the statement, there was no reversible error. Following Watts v. State, 18 Texas Crim. App., 384, and other cases.

**3.—Same—Evidence—Moral Turpitude—Practice in Trial Court.**

Where the State's counsel asked the defendant on cross-examination whether it wasn't true that some five or six years ago, in the county of the prosecution, he was tried, indicted, and convicted of the offense of bigamy and sent to the penitentiary for that offense, which he answered in the affirmative, there was no reversible error, as this gave no indication that the question called for testimony too remote, and the bill as qualified showed that the trial court had no knowledge that the conviction had occurred prior to the time indicated by the question.

**4.—Same—Requested Charges—Defense of Property—Force Used.**

Where, upon trial of murder, the facts did not raise the issue that the homicide was in defense of property, but showed that the true issue was whether it was in defense of defendant's person, there was no error in refusing requested charges on that subject; besides, these charges ignored the essential elements of the law of homicide in defense of property, namely, that of resorting to other means before taking life. Following Wells v. State, 63 Texas Crim. Rep., 622.

5.—Same—Charge of Court—Reasonable Doubt—Grades of Homicide—Requested Charge.

Where, upon trial of murder, the court in separate paragraphs charged on the law of murder, manslaughter, and self-defense, and in one of the concluding paragraphs of the charge the court instructed on the law of reasonable doubt as applied to the whole case, and an exception was reserved to the failure of the court to charge on the law of reasonable doubt as between the grades of homicide, which the court refused to do, the same was reversible error. Overruling Little v. State, 39 Texas Crim. Rep., 655.

6.—Same—Rehearing—Presumption of Law—Deadly Weapon—Statutes Construed.

The omission to charge article 1106, P. C., was not such fundamental error as would require reversal in the absence of a proper exception, under a correct interpretation of article 743, C. C. P. Following Williamson v. State, 74 Texas Crim. Rep. 293, and other cases.

7.—Same—Article 743, C. C. P.—Practice in Trial Court—Requested Charge.

The construction placed upon the present practice Act is that the trial judge is still expected to write the law applicable to the case in his charge to the jury, and if he has inadvertently omitted some phase of the law, or, if he thinks some phase of the law inapplicable, where counsel for appellant entertains the contrary view, and the omission is specifically pointed out by written objection, it is not necessary in a felony case that a special charge be submitted to supply the omission.

Appeal from the District Court of Van Zandt. Tried below before the Honorable Joel R. Bond.

Appeal from a conviction of murder; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Stanford, Sanders & West, Charles L. Hubbard,* and *Gentry & Gentry,* for appellant.—On question of submitting Article 1106 P. C.: Kendall v. State, 8 Texas Crim. App., 569; Jones v. State, 17 id., 611; Jackson v. State, 22 id., 445.

On question of charge on reasonable doubt and degrees of offense: Murray v. State, 1 Texas Crim. App. 417; Lister v. State, 1 id., 739; Eans v. State, 10 id., 421; Tinsley v. State, 106 S. W. Rep., 347; and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.—Cited cases in opinion.

MORROW, PRESIDING JUDGE.—Appellant was convicted of murder; punishment fixed at confinement in the penitentiary for a period of twenty-five years.

Jones Richardson was shot and killed by the appellant. They were brothers, both being of mature years. They were, at the time, in the house upon the farm known as the "old Richardson Home

Place." It had been owned by appellant's father and mother; had been their home prior to his death and her home thereafter. Appellant also resided there for twelve years immediately preceding the homicide. His mother, for a short time, had been away, leaving her personal belongings. The daughter and son-in-law of appellant also resided on the farm. They, however, were moving away from it, and appellant was in the act of moving to the city of Tyler, where he was in business. The deceased resided with his family in the state of Oklahoma and had done so for about twelve years.

The appellant had purchased the interest in the farm of all the children save the deceased, and his mother had made to him a deed to her interest. Shortly preceding the homicide, the deceased came to the vicinity, and, acting on behalf of his mother and in her name, brought against the appellant a forcible entry and detainer suit for the possession of the farm, and upon the trial the judgment was in her favor and from it appellant appealed.

Evidence of threats against the deceased and conduct indicating ill-feeling and expressions of such sentiments was introduced.

Appellant's mother testified that she made the deed to the appellant without understanding the nature of the document that she executed.

Appellant denied the threats and expressions of bad feeling, though he did not think the deceased had treated him right. He explained his possessoin of the pistol on the occasion of the homicide by stating that he had had difficulty with another person and was expecting trouble with him; that he had no knowledge of his brother being at the place when he went there; that on arrival he learned from his mother that his brother was there, and he walked up and said: "Hello, Jones; what are you doing here?" and he said: "I will show you," and jumped up and got his gun out of his grip and cocked it; and the appellant said to him, three or four times: "Take it out of my face." He then retreated a couple of steps. The deceased advanced. His mother sought to interfere. Appellant said: "He must take that gun out of my face;" that Jones said to his mother. "Step aside, I am going to shoot," whereupon the appellant shot. Appellant fired one shot, which killed the deceased.

There was sharp conflict in the testimony touching the possession of the pistol by the deceased at the time of the homicide.

Complaint is made in Bill No. 2 of the receipt of evidence to the effect that the appellant stated that he had appealed the forcible entry and detainer case. In qualifying the bill, the court said that the testimony given by the witnesses was this: "I heard defendant say that he had appealed the case that his mother had won against him and that he didn't see what Jones, his brother, was doing there on the place." This testimony, coming as it did, shortly preceding the homicide, related such a declaration by the appellant as was, in our opinion, available to the State upon the issue of motive. The declaration of the appellant was competent and relevant to show his state of mind

towards the deceased. McKinney v. State, 8 Texas Crim. App. 627; Branch's Ann. Tex. Penal Code, Sec. 1881, and cases listed.

A witness who had given material testimony in favor of the appellant was asked, on cross-examination, if he had not stated with reference to the deceased: "The son-of-a-bitch is dead in hell, where he ought to be." Upon the denial by the witness, proof was made for the purpose of impeachment that he did make the statement. This testimony, in our opinion, was admissible under the rule which permits the opposing party to break the force of the testimony of an adverse witness by proof of his bias or prejudice. Watts v. State, 18 Texas Crim. App. 384; Brownlee v. State, 48 Texas Crim. Rep. 410; Gilber v. State, 56 Texas Crim. Rep. 462; Tow v. State, 22 Texas Crim. Rep. 184; Branch's Ann. Tex. Penal Code, Sec. 163 and cases listed.

While upon the witness-stand, State's counsel directed to the appellant this question: "Isn't it true that some five or six years ago, in Parker County, you were tried, indicted and convicted of the offense of bigamy, and sent to the penitentiary for that offense?" Objection was made, as stated in the bill, upon the ground that before the witness was placed upon the stand, his counsel asked the court to instruct the State's counsel to refrain from making inquiry for the reason that the conviction had taken place in the year 1912. The court required an answer, which was: "Yes, sir; that is correct." In approving the bill, the court disallows the part thereof stating that he was requested to prevent the inquiry on account of the date of the offense. He calls attention to the fact in his qualification that the question did not indicate that the inquiry related to a remote offense, and adds that it was on re-direct examination; that it developed that the conviction took place in October, 1912; that prior to this development on re-direct examination, the court had no information as to the date other than indicated by the question. The propriety of making proof of the conviction of other felonies to affect the credibility of the accused when testifying as a witness is well established. Lights v. State, 21 Texas Crim. App. 313, and other cases listed in Branch's Ann. Tex. Penal Code, Sec. 167. We are not advised of any rule that would have excluded the testimony as too remote even if there had been a request to do so. Instances are available in which such testimony has been received over the objection that it was too remote when the prior offense had occurred at a time more distant than in the instant case. Scoville v. State, 77 S. W. Rep. 792. Even, however, if the time of the prior offense was too remote to render proof of it available to the State, the matter, as presented, does not authorize a reversal upon that ground. The question, as framed, fixing the time at five or six years, gave no indication that it called for testimony too remote (Davis v. State, 52 Texas Crim. Rep. 630), and the bill, as qualified, shows that the trial court had no knowledge that the conviction had occurred prior

to the time indicated by the question. After the date was revealed upon re-direct examination, no request was made to exclude the testimony.

Three special charges bearing upon the possession of property were requested. One of them reads thus:

"You are charged that in law the defendant was in possession of the home where the killing occurred and that he had a right there, and that the deceased did not have the right to forcibly eject him and the place of the homicide the deceased undertook to eject him then if you find from the evidence that when the defendant returned to the defendant had the right, under the law, to defend his possession of the property and if you find from the evidence that he shot and killed the deceased in defense of his home you will acquit the defendant, or if you have a reasonable doubt as to this you will acquit."

Another charge in substantially the same language was given, and the third was in these words:

"You are further charged that the defendant had a legal right to the possession of the premises where the homicide occurred and that he had the further legal right to inquire into and demand an explanation of the presence of any other person whom he might find in possession of or on said premises."

The third special charge was given, the others were refused, and the refusal is complained of. We do not regard the complaint as meritorious.

Touching the homicide in defense of property, our statute is as follows:

"Homicide is justifiable also in the protection of the person or property against any other unlawful and violent attack besides those mentioned in the preceding article, and, in such casess, all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack; and any person interfering in such case in behalf of the party about to be injured is not justifiable in killing the aggressor, unless the life or person of the injured party is in peril by reason of such attack upon his property." (Penal Code, Article 1107).

Also, the possession must be corporeal property and not a mere right, and the possession must be actual and not merely constructive. The possession must be legal, though the right to the property may not be in the possessor. Every effort in his power must have been made by the possessor to repeal the aggression before he would be justified in the killing.

We have given above a synopsis of the testimony as we comprehend it. That pointed out by the appellant as raising the issue is that of appellant stating his age—forty-four years of age; that the deceased was younger; that appellant and his family had resided there for a number of years; that his mother had also lived there; that he

had bought from or contracted for all the interest of all the heirs except the deceased and had received the deed to the land from his mother in 1915, and had claimed the place since that time; that the deceased had an interest in it, but that it was only a short time before the homicide that appellant learned that the deceased had anything to do with the possession; that deceased had never come to him with reference to his interest in the land; that his mother had left home on the eighth day of January, while the appellant was in Tyler; that he heard that the deceased came on the 23rd of December, but did not know of his own knowledge when he came. Appellant's daughter testified that she had heard the deceased remark: "We have got possession now, and that is what I have been working for, and that is all I want." It is not clear that this was communicated to the appellant.

The facts do not impress us as presenting the issue that the homicide was in defense of property, but the true issue was whether it was in defense of appellant's person. If the issue existed, we think the special charges requested were not pertinent to present it. They ignored the essential elements of the law of homicide in defense of property, namely, that of resorting to other means before taking life. In the case of Wells v. State, 63 Texas Crim. Rep. 622. Presiding Judge Davidson, speaking for the court, said:

"They were some feet apart; the distance is made uncertain by the varying testimony of the witnesses, the defendant's evidence putting him at the door, the State's witnesses putting him back from the door. Appellant was in the room and deceased upon a gallery. The law requires before killing, the possessor of the house must use every other reasonable effort in his power to repeal the intrusion in order to be justified in taking human life. Where a party is an intruder or trespasses upon the habitation of another, or being his guest, puts himself wrong by his conduct in the house, the owner has a right to put him out, provided he uses no more force or greater of more dangerous means than was necessary to effect the expulsion of the party. Turner v. State, 16 Texas Crim. App. 378; Stanley v. State, 16 Texas Crim. App., 392; Hinton v. State, 24 Texas, 454. Reasonable force must be used. McGray v. State, 38 Texas Crim. Rep. 609. And it was held in Sargent v. State, 35 Texas Crim. Rep. 325, that on a trial for murder, where the evidence presented the issue of an unlawful intrusion into the home, the defendant would have no right to complain of a charge which authorized him to slay deceased for such intrusion after he had resorted to all other means except retreating to get rid of him."

In the instant case, on the facts viewed in their strongest light in favor of the appellant, the house in which the homicide took place was the home of the mother of appellant and deceased. The deceased was there with the consent of the mother. His presence cannot be

'given the color of an attempt to eject the appellant by physical force. Admittedly, the means to which he had resorted to oust the appellant were those provided by law. There was litigation pending. The mother, admittedly entitled to possession coinciding with that of appellant, was also claiming title. The deceased was the owner of an interest in the property and to settle the differences, resort was had to the courts. The fact that the homicide took place upon the premises in controversy did not characterize it as a homicide in defense of the property. Such a contruction of it would have been manifestly against the rights of the appellant. From his standpoint, he was attacked by the deceased and fired to save his life. His right to defend his person was far broader than his right to defend his property. In Ruling Case Law, Vol. 13 (page 839), it is said:

"It is not true, as a general rule, that an invasion of property rights constitutes an excuse for homicide. On the contrary, it is only when the element of danger to the person is present that the law countenances the taking of human life. The fact that the slayer is on his own land at the time of the killing, and the further fact that the deceased was engaged in the acts of aggression or violence, are of great—oftentimes conclusive—probative force in establishing self-defense; but it is a defense of the person that is in issue, not the element of protection of property dissociated from protection of person."

In Hill v. State, 43 Texas Crim. Rep. 585, the court said:

"The difficulty here arose as to the right of appellant to pasture his horse on the lands of the prosecutor, and this involved the right to the possession of said land. The difficulty itself, however, did not occur in the defense of property. Possession was a disputed question. It appears that the land had been awarded to appellant, and prosecutor had been living on that section for some time, and was still living on it. The fact that the altercation grew out of adverse claims to the possession of property would not require a charge involving the right of appellant to protect his claim to the property against an intrusion of the prosecutor."

On the subject under discussion, we think the rights of the appellant were fully conserved in giving to the jury the special charge which we have quoted above.

The court, in separate paragraphs, charged on the law of murder, manslaughter and self-defense. In one of the concluding paragraphs of the charge, the court instructed on the law of reasonable doubt as applied to the whole case. An exception was reserved to the failure of the court to charge on the law of reasonable doubt as between the grades of homicide. We think this would have been the better practice, and it is conceivable that a case might arise in which the refusal to do so would be harmful error. McCall v. State, 14 Texas Crim. Rep. 353; Murray v. State, 1 Texas Crim. App. 417; Blake v. State, 3 Texas Crim. Rep. 581. The general rule, however, seems

not to imperatively demand that the trial court give such an instruction where, as in the instant case, the law of reasonable doubt is in the charge applied to the whole case. In Cockerell's case, (32 Texas Crim. Rep. 592), Judge Davidson, on the subject, used the following language:

"Even had the court failed to instruct the jury to apply the reasonable doubt between the degrees of culpable homicide charged upon, such omission would not have been error where the court applies such doubt to the whole case;" citing Hall v. State, 28 Texas Crim. App. 146, wherein it is said: "The charge of the court is made the subject of several objections, which are claimed for error. It is objected that the court did not instruct the jury to apply the reasonable doubt as between the several degrees charged upon. Such omission has never been held reversible error, where the court applies the reasonable doubt to the whole case, except in those cases where such an additional instruction has been specially requested and refused by the court."

Other cases directly in point are found, among them being Little v. State, 39 Texas Crim. Rep. 655; Wallace v. State, 97 S. W. Rep. 1051; Furr v. State, 194 S. W. Rep. 398.

There are other bills of exceptions which we have carefully examined. They, in our opinion, present no doubtful question or matter which we deem it necessary to discuss.

We find no error in the record, and therefore order the judgment affirmed.

*Affirmed.*

ON REHEARING.

March 22, 1922.

HAWKINS, JUDGE.—In the original submisson of his case appellant raised the question that the court below committed error in not giving him the benefit of a charge as to the presumption of the law from the use of a deadly weapon by deceased under Article 1106, Vernon's P. C. Complaint is made because such assignment was not discussed in our original opinion.

No exception was taken to the failure of the court to embrace said Article in his charge, neither was any special charge requested upon the subject. In no way was the lower court's attention called to such omission. Notwithstanding this appellant insists that it was fundamental error to omit to charge thereon, and that the provisions of Article 743, Vernon's C. C. P., if properly construed, require this court to pass upon the question in the absence of a special charge requested or exception taken at the time of trial. Said article, in connection with the preceding ones, has been so frequently construed since the amendment of the Legislature in 1913 we do not think it necessary to again review the matter. One of the clearest statements of the construction of the court under the present practice Act will be found in Williamson v. State, 74 Texas Crim. Rep. at

page 293. Referring to the article in question and the Acts of the 33d Legislature, the court used this language:

"It was provided in that Act that the charge before being read to the jury should be submitted to counsel and they must at that time present in writing any objections to the charge, distinctly specifying each ground of objection, and if no objection is made at that time, the case shall not be reversed because of errors in the charge, and if such objections are made we shall not reverse unless such errors were calculated to injure the rights of defendant, or unless it appears he has not had a fair and impartial trial."

We believe the foregoing to be a correct interpretation of Article 743 under the Acts of the Legislature referred to, and have been unable to agree with the construction thereof urged by appellant. The omission to charge Article 1106 was not such fundamental error as would require reversal in the absence of proper exceptions.

The court charged on the issues of murder and manslaughter. Nowhere in his charge is the doctrine of reasonable doubt as between degrees presented. Counsel by timely and pertinent exception pointed out this omission. In our original opinion we held that the law of reasonable doubt having been applied to the whole case the omission to charge the same as between the degrees was not reversible error. It is urged in the motion for rehearing that in this portion of our opinion we were in error, especially so as the omission was called to the attention of the trial judge by timely exception presented in writing before the charge was read.

We have had occasion to review many decisions in our consideration of this question on rehearing. In Guagando's case, 41 Texas, 634, the jury was charged to acquit if there was reasonable doubt of guilt, but there was omission to instruct reasonable doubt between degrees of murder, held error. In Murray v. State, 1 Texas Crim. App. 423 Judge White says: "The question is as to the propriety and necessity of a charge upon the reasonable doubt between the different degrees in cases of murder, *especially when such charge is asked by defendant.* There are, as it appears to us, many good reasons why this rule should be adopted. Oftentimes it is of as great and vital importance to a defendant to have the benefit of whatever reasonable doubt may arise in determining the grade and degree of his crime as in adjudging the general measure of his guilt." In Lister's case, 1 Texas Crim. App. 744, no special charge on the subject was requested; the reasonable doubt between the degrees was approved, and commended to the trial courts. In Eanes v. State, 10 Texas Crim. App. 452, reasonable doubt was charged generally, and then was added, "and the rule of reasonable doubt applies to the grade of offense." It was held not sufficiently definite as applied to degrees. McCall (14 Texas Crim. App. 353), was charged with theft, but Judge Wilson says: "Where an offense consists of different degrees, a charge giving the defendant the benefit of reasonable doubt be-

tween the degrees would be proper, and it would be *error ordinarily in such case to refuse such charge when requested."* In Hall v. State, 28 Texas Crim. App. 146, it is said: "It is objected that the court did not instruct the jury to apply the reasonable doubt as between the several degrees charged upon. Such omission has never been held reversible error, where the court applies reasonable doubt to the whole case, *except in those cases where such additional instruction has been especially requested and refused by the court.* McCall v. State, 14 Texas Crim. App. 353." In Frizzell v. State, 30 Texas Crim Rep., 56, is found this language: "To the objection that the charge of the court omitted to instruct the jury to apply the reasonable doubt as between several degrees charged on, we reply such doubt to the whole case, *except in this,* where the court has *refused* omission is not error when the court has applied the reasonable *special instruction covering the omission."* In Cockrell's case (32 Texas Crim. Rep. 592) Judge Davidson says: "Exception was reserved to the charge because it failed to charge the reasonable doubt between manslaughter and self-defense. The court gave this charge as between murder in the first and second degrees, also between murder in the second degree and manslaughter, and further instructed if there was a reasonable doubt of defendant's guilt he should be acquitted. This was sufficient." The foregoing quotation disposed of the question, but this clause is added. "Even had the court failed to instruct the jury to apply the reasonable doubt between the degrees of culpable homicide charged upon, such omission would not have been error· where the court applies such doubt to the whole case." The Hall and McCall cases (supra) are here then cited, both of which were to the effect that it would be error if request was made for such instruction and refused. In Little v. State, 39 Texas Crim. Rep. 661 will be found the following language, used by Judge Henderson. "Appellant objected because the court failed to instruct the jury as to a reasonable doubt as between the degrees of murder. The court instructed the jury if they had a reasonable doubt as to the guilt of defendant to acquit him. This applied to all the degrees, and it was not necessary for the court to give a specific charge as to a reasonable doubt as between the degrees. The charge in question as given authorized the jury to acquit of any degree. if they had a reasonable doubt of the guilt of defendant of that particular degree." No authorities are cited in support of the proposition as announced in the Little case and no reference whatever is made in that opinion to the cases reviewed by us announcing a contrary doctrine. Upon a more thorough examination we find that the case of Wallace v. State, 97 S. W. Rep., 1051, cited by us in our original opinion does not support the exact proposition under discussion. The question there before the court was the failure to charge upon reasonable doubt directly in connection with the charge on self-defense, and the holding in the Wallace case was to the effect that having charged the doctrine of reason-

able doubt as applied to whole case it was sufficient. The same is true with reference to the case of Furr v. State, 194 S. W. Rep. 398, cited in the original opinion. That was a seduction case and the decision turned largely upon the same point presented in the Wallace case. We find in the examination of the authorities much confusion arising at this point. A great many cases cited by the State in their brief in reply to appellant's motion for rehearing throw no light upon the direct question before us, but are in support of the proposition that it is not necessary for the trial judge to charge the law of reasonable doubt in connection with each separate defensive issue. There is no lack of authority to support the latter proposition and many of them may be found collated in Mr. Branch's Anno. Pen. Code under Sec. 11, on page 5. We may have overlooked some authorities, but so far as we have examined those to which our attention has been directed or which have been discovered by us, the Little case, (supra) is the only one which holds unqualifiedly that it is not error for the court to refuse to charge on reasonable doubt as between the degrees in the face of a request for such instruction. The failure of the opinion in that case to cite any·authority or make any reference to the immediately preceding decisions announcing a contrary doctrine caused us to make the research, and we have been unable to reconcile that opinion with the many others cited by us.

As we understand the construction placed upon the present practice Act the trial judge is still expected to write the law applicable to the case in his charge to the jury, and if he has inadvertently omitted some phase of the law, or if he thinks some phase of the law inapplicable where counsel for appellant entertains the contrary view, and the omission is specifically and pertinently pointed out by written objection to the charge as prepared, it is not necessary in a felony case that a special charge be submitted to supply the omission, but appellant may stand upon his objection filed if it is sufficiently specific to call the court's attention to the matter complained of. Of course a different rule obtains in misdemeanor cases.

We have reached the conclusion that we were in error in holding that the law of reasonable doubt as charged by the court as applicable to the question of guilt cured the failure to charge upon the same subject as between degrees. The jury might entertain no reasonable doubt as to the guilt of one upon trial, and yet be confused in reaching a conclusion as to the degree of the offense. The omission in the charge having been directed to the court's attention in a timely manner, the same should have been supplied.

For a failure to do so we have reached the conclusion that the judgment of affirmance must be set aside and the judgment of the trial court reversed and the cause remanded.

*Reversed and remanded.*