## WILLIAM REGITTANO v. THE STATE.

No. 6391. Decided February 8, 1922.

Rehearing denied February 6, 1924.

**1.—Murder—Manslaughter—Charge of Court—Bill of Exceptions.**

Where defendant complained that the court's charge required the jury to believe appellant's defensive theory as a predicate for acquittal, whereas he was entitled to an acquittal if there existed in the mind of the jury a reasonable doubt as to whether his defensive theory was true, but it appeared from the record that no written bill of exceptions was taken to this paragraph of the Court's charge, there was no reversivle error under article 735-743 C. C. P. Following Boaz v. State, 89 Texas Crim. Rep., 516, and other cases.

**2.—Same—Self-defense—Reasonable Doubt—Charge of Court—Rule Stated.**

It is required by statute that the Court's charge before being read to the jury should be submitted to counsel and they must at that time present in writing any objection to the charge, distinctly specifying each ground of objection, and if no objection is made at that time, the case shall not be reversed because of errors in the charge, and, unless such errors were calculated to injure the rights of the defendant, or unless it appears he has not had a fair and impartial trial. Following Richardson v. State, 239 S. W. Rep., 218, and other cases.

**3.—Same—Charge of Court—Reasonable Doubt—Entire Charge.**

Where it appeared that in various parts of the Court's charge in the instant case the Court presented the law of reasonable doubt, and that in most cases it is sufficient to apply the doctrine of reasonable doubt to the whole case, and the charge on self-defense was not specifically excepted to in writing in the manner now required by law, there is no reversible error. Following Eggleston v. State, 59 Texas Crim. Rep., 542, and other cases.

**4.—Same—Rehearing—Bill of Exceptions—Change of Court—Rule Stated.**

A bill of exceptions in form usual for such bills reciting that the charge of the Court was excepted to for various reasons, would not be sufficient to bring such alleged exceptions before this Court, unless the same appear to have been made in writing distinctly specifying each ground of objection, as is provided in article 735 C. C. P., and an oral exception is not sufficient.

**5.—Same—Special Venire—Sheriff's Return.**

Where appellant complained of the overruling of his motion to quash the return under special venire and it appeared that his ground of objection was that as to thirty-three veniremen no return was made and as to the remaining thirty-eight the return was insufficient, but it appeared that the Court gave the sheriff time to amend his return although this amended return nor the supplemental motion to quash appears in the record. etc., it cannot be held that said return was insufficient.

**6.—Same—Evidence—Scene of the Shooting.**

No error was committed in admitting testimony as to the blood found on the car or around the scene of the shooting, or that at the place where the body of the deceased was found there was a little blood.

**7.—Same—Requested Charge—Presumption.**

Where defendant contended that he was shot by deceased in the head and then took from her the pistol used by her and shot her with it, there was no error in refusing the requested charge to the effect that if deceased was armed with a pistol at the time she was killed, etc., the law presumes that the deceased intended to murder the defendant or inflict upon him serious bodily injury.

**8.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions, complaining that a witness stated that the body of the deceased had a wedding ring on its finger, stated only the grounds of the objections, the same presented no reversible error.

**9.—Same—Second Motion for Rehearing.**

Where appellant requested permission to file a second motion for rehearing, asserting that many alleged errors were not considered either in the original submission or on motion for rehearing, but this was not borne out by the record the request must be denied.

Appeal from the Criminal District Court of Harris. Tried below before the Honorable C. W. Robinson.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Jno. D. Abney, John M. Cobb, J. V. Meek* and *H. E. Kahn, Norman G. Kittrell, Sr.,* for appellant.—On question of special venire and return of sheriff: Bates v. State, 19 Texas, 124; Clay v. State, 51 S. W. Rep., 370; Brown v. State, 65 id., 913; Horn v. State, 50 Texas Crim. Rep., 404.

On admitting prejudicial evidence: Campbell v. State, 8 Texas Crim. App., 80.

On question of Court's charge on self-defense and reasonable doubt: Kendall v. State, 8 Texas Crim. App., 584; Clark v. State, 120 S. W. Rep., 179, and cases cited in opinion.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, and *E. T. Branch,* District Attorney, for the State.—On question of reasonable doubt: Lee v. State, 67 Texas Crim. Rep., 146; Walker v. State, 88 Texas Crim. Rep., 399, and cases cited in opinion.

MORROW, Presiding Judge.—Appellant was charged with murder and convicted of manslaughter; punishment fixed at confinement in the penitentiary for five years.

He shot and killed Harriet Jenkins. The deceased was a woman of negro blood, but apparently white. She was the paramour of the appellant. The two were riding in an automobile at night-time.

This is appellant's version of the homicide. She was driving the car and stopped it at about six miles out. Appellant got out to crank

it. She told him that she wanted $200 and used abusive language to him. He had more than that amount of money on his person but declined to give it to her, stating that he needed it to use in connection with his business. He had been unable to crank the car and was standing near it, talking to her. She shot him in the neck. He said: "I grabbed her and took the pistol away from her. I shot once, two or three or four times, I don't know what, I cannot tell of it exactly, I don't know, and after a while I fell down, I don't know how long I stayed there. I might have stayed there for two or three hours, I don't know what. I could not see where I was going. * * * I was standing with my elbow on the rear fender. She was in front, sitting on the fender; I did not know anything was going to happen. I did not know she was going to shoot me. The shot caused me pain and suffering. I thought it would kill me. I fell on her, I grabbed her, I took the gun; I could not swear what I done. After I was shot I was afraid."

It was shown that appellant was found in the road in a dazed condition, badly shot; that through the aid of others, he finally reached a sanitarium and was treated for the wound. The doctor said: "He was shot in the neck. The bullet entered here—that it entered about midline of the body under the chin and went diagonally across the mouth, and passed in behind the eye, and came out on his right forehead, shattering part of the skull. He had an opening in the top of the mouth, and the wound necessitated the taking out of his eye. There was no signs of any powder burns. * * * The effect of the wound was an injury to the front part of the brain. He was bloody. A wound of that kind causes bloodshed, pain and suffering. I took the bullet out of him. It was lodged under the skin, and it cut under the bone. When I operated on him I took the bullet out, and some shattered bone. It was a lead bullet of 38 caliber."

A number of witnesses testified in substance that it would have been impossible for the wound to have been self-inflicted without leaving powder stains upon the skin, and that there were none found.

The body of the deceased and the car in which she and appellant had been riding were found. The only explanation of the incident is that given by the appellant.

The court, in addition to the charge on murder and manslaughter, instructed upon the law of self-defense. The charge on self-defense was in these words: "A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

If from the evidence you believe the defendant killed the said Harriet Jenkins but further believe that at the time of so doing the deceased had shot him and caused him to have a reasonable expectation or fear of death or serious bodily injury and that acting under such reasonable expectation or fear, the defendant shot and killed the deceased, then you should acquit him.

If you believe from the evidence that the said Harriet Jenkins shot the defendant and that he seized the pistol used by her and shot and killed her then you will acquit the defendant.''

This charge is complained of because, in effect, it required the jury to believe appellant's defensive theory as a predicate for acquittal, whereas he was entitled to an acquittal if there existed in the minds of the jury a reasonable doubt as to whether his defensive theory was true. This complaint is met by the State with the proposition that the court, at the close of the charge, having instructed upon the law of reasonable doubt in the language of the statute, no error was committed in failing to give such an instruction in connection with the charge presenting appellant's affirmative theory of self-defense.

Upon this subject, it seems to the writer that the authorities are not harmonious. Powell's case (28 Texas Crim. App., 398), apparently supports the State's theory, while Johnson's case (29 Texas Crim. App., 150), apparently supports the position of the appellant. These two cases were written by the same judge, and it may be that in the respective records there were facts differentiating them, which in the report of the cases are not revealed. Among the cases in line with Johnson's case, supra, are Bennett v. State, 30 Texas Crim. App., 341; Rutherford v. State, 44 Texas Crim. Rep., 432; Bird v. State, 49 Texas Crim. Rep., 96; Moody v. State, 52 Texas Crim. Rep., 232; Henderson v. State, 51 Texas Crim. Rep., 194; Stewart v. State, 51 Texas Crim. Rep., 232; Harris v. State, 55 Texas Crim. Rep., 479; Maloney v. State, 57 Texas Crim. Rep., 435, 125 S. W. Rep., 36; Castro v. State, 66 Texas Crim. Rep., 282, 146 S. W. Rep., 553; Vernon's Texas Crim. Statutes, Vol. 2, p. 683; subdivision 18.

Mr. Branch, in annotating the Penal Code, states the rule, as deduced from numerous decisions, in these words: ''A charge is error which requires the jury to 'find' or 'believe' the defensive theory before they can acquit, if reasonable doubt is not also charged in immediate connection with the same paragraph.'' Branch's Ann. Tex. Penal Code, sec. 11, p. 5; Smith v. State, 45 Texas Crim. Rep., 251; Bennett v. State, 30 Texas Crim. App., 341.

Upon this question, this court, through Judge Willson, said: ''We think the paragraph is subject to the exception that it requires the jury to 'believe from the evidence' the existence of the conditions which entitled him to acquittal. It virtually requires the jury to believe from the evidence that he is innocent before finding him not guilty, whereas the correct rule is that the jury must presume his

innocence until his guilt has been established by the evidence beyond a reasonable doubt. If the jury entertained a reasonable doubt upon the whole evidence of the defendant's guilt, it was their duty to acquit him, although they might not believe from the evidence the existence of the facts and conditions, or any of them, mentioned in said paragraph. It is true that in concluding his charge the learned judge gave the usual instruction as to the presumption of innocence and as to reasonable doubt, and ordinarily such instruction is sufficient, but in this case we do not think it was sufficient to correct and counteract the error in paragraph five.'' (Johnson v. State, 29 Texas Crim. App., 150.)

In the instant case, it is the State's burden to show that the homicide was committed by the appellant and that it was unlawful. If the jury had a reasonable doubt as to either, it was their duty to acquit, and this without reference to whether they credited the appellant's defensive theory or not. The statute on the presumption of innocence and reasonable doubt operates without reference as to whether appellant presents any defensive theory. The statute says: ''The defendant in a criminal case is presumed to be innocent until his guilt is established by legal evidence; and, in case of reasonable doubt as to his guilt, he is entitled to be acquitted. (Code of Crim. Proc., Art. 785.) See also Knight v. State, 64 Texas Crim. Rep., 541; Vernon's Texas Crim. Statutes, Vol. 2, p. 678, subdivision 11 and cases listed.

The law requiring a charge on the presumption of innocence and reasonable doubt is generally satisfied when the doctrine is applied by a charge referring to the whole case, that is, referring to the general issue of guilty or not guilty. Vernon's Texas Crim. Statutes, Vol. 2, p. 684, subdivision 19 and cases cited. It has been held that it is not required that it shall be charged in every case with regard to each affirmative independent offense. (McCall v. State, 14 Texas Crim. App., 353; Edwards v. State, 58 Texas Crim. Rep., 342). It is believed, however, that where, as in the instant case, the defensive theory is an affirmative one, that is, where the connection of the accused with the homicide is conceded and justified by affirmative testimony given by the accused, when the matter is properly presented in the trial court, there should be embodied in the charge submitting his defense the information to the jury that if they believe the affirmative defensive facts or have a reasonable doubt of their truth, an acquittal should result. This, we understand to be the rule applied in Johnson's case, supra, and followed in many others to which we have adverted. Moreover, we believe it to be a correct and sound rule, when considered in connection with our statutes upon the law of homicide and the statute concerning the presumption of innocence, and we are of the opinion that the failure of the trial judge, in response to ap-

96 T. C.—31

pellant's objection to the charge, to correct it in accord with these views, was error which requires a reversal of the judgment.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

November 29, 1922.

LATTIMORE, Judge.—When we wrote in this case originally, reversing same because of what we deemed an error in the charge of the court, our attention was not called particularly to the fact that there was no exception taken to this part of the charge of the court upon the trial. An examination of the record discloses an entire failure on the part of appellant to except to any particular part of the court's charge as given. Of the seventeen grounds of exception presented to the court before the charge was read to the jury, only one is affirmatively aimed at any part of said charge, and the remaining criticisms are of the court's failure to submit various matters set out therein at length. No exception was leveled at any paragraph or particular part of the charge, nor was the court's attention called to any omission or misstatement in any part thereof. In order to be sufficient under the law of 1913,—Arts. 735-743 of our Code of Criminal Procedure, an exception must be directed at some portion of the charge with such particularity as to enable the trial court to perceive and correct the supposed error. Boaz v. State, 89 Texas Crim. Rep., 515; Richardson v. State, 91 Texas Crim. Rep., 318, 239 S. W. Rep., 218; Williamson v. State, 74 Texas Crim. Rep., 293. The Boaz case, supra, is almost entirely parallel with the instant case, the court's opinion therein holding that a charge on self-defense based on threats which omitted an immediate application of the doctrine of reasonable doubt, was not reversible error, the charge elsewhere containing the application of said reasonable doubt to the whole case; on rehearing this point was elaborated and the court's position on original opinion upheld after careful examination of the authorities, including Johnson v. State, 29 Texas Crim. App., 150. The purpose of the law requiring charges to be submitted to counsel for both sides before argument, and a reasonable length of time given in which to take exceptions and present objections thereto, was to require that objections be made thereto with sufficient particularity to point out erroneous statements and enable the trial court to correct same, or to enable counsel for the appellant, after presenting such exception, to prepare and present special charges supplying the omissions in the main charge or correcting erroneous statements therein. Judge Hawkins in the Richardson case, supra,

with the approving statement substantially that it is one of the clearest enunciations of the proper construction of our present practice act on this subject, quotes from the Williamson case as follows:

"It was provided in that act that the charge before being read to the jury should be submitted to counsel and they must at that time present in writing any objections to the charge, distinctly specifying each ground of objection, and if no objection is made at that time, the case shall not be reversed because of errors in the charge, and if such objections are made we shall not reverse unless such errors were calculated to injure the rights of defendant, or unless it appears he has not had a fair and impartial trial."

As stated above, no exception having been taken to the court's charge pointing out any particular defect therein, we have concluded that the State's motion for rehearing is well founded. We may further observe that in various parts of the charge in the instant case the court presented the law of reasonable doubt. In paragraph 6 thereof wherein the law of the case is applied to the facts, the specific instruction is: "If you believe from the evidence beyond a *reasonable doubt* that the defendant . . . and not in defense of himself against an unlawful attack, real or apparent, . . . did unlawfully and with malice aforethought kill" etc. Further in said paragraph, in applying the law of reasonable doubt to the degrees of homicide, appears the following:

"You are further instructed that, if from the evidence you believe, beyond a reasonable doubt, that the defendant is guilty of some grade of culpable homicide, but you have a reasonable doubt whether the offense is murder or manslaughter, then you must give the defendant the benefit of the doubt, and in such case if you find him guilty it could not be of a higher grade of offense than manslaughter, and you will state in your verdict of what offense he is found guilty."

Again the court instructed the jury on reasonable doubt in applying the law to the facts as applicable to manslaughter. Also further in the charge we find the following:

"In all criminal cases the burden of proof is on the State. The defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt; and in case you have a reasonable doubt as to the defendant's guilt you will acquit him, and say by your verdict 'No Guilty' '', which applies the law of reasonable doubt to the whole case.

In McCall v. State, 14 Texas Crim. App., 363, we find the following:

"Upon the subject of a reasonable doubt, we think the charge of the court was sufficient. We do not understand it to be required that this charge upon reasonable doubt shall be given in regard to an affirmative, independent defense, as contended for by counsel, nor do we understand the cases cited by him as supporting that proposition.

We think the demands of the law have been complied with when the jury are told that if, from the evidence, they entertain a reasonable doubt of the defendant's guilt, they will acquit him. Where an offense consists of different degrees, a charge giving the defendant the benefit of a reasonable doubt between the degrees would be proper, and it would be error ordinarily in such case to refuse such a charge when requested; but, in a case like the present one, the court having given the defendant the benefit of a reasonable doubt with reference to the whole case, we do not think it was error to refuse the charges requested by defendant.''

In Ashlock v. State, 16 Texas Crim. App., 23, occurs the following:

''By the charge the jury were instructed that, if they had a reasonable doubt of the defendant's guilt, arising from the evidence in the case, they should aquit him. This was sufficient. It was not required that this instruction should be given with reference to every or any particular phase of the case. (McCall v. The State, 14 Texas Ct. App., 353.) There was no error, therefore, in refusing the special charge requested by defendant.''

In Farris v. State, 55 Texas Crim. Rep., 482, Judge Davidson writes as follows:

''The charge of the court is critized because it failed to charge that if the jury should have a reasonable doubt that the animal claimed to have been sold by appellant to the purchaser was the animal claimed by Hamilton, they should acquit. The court gave a general charge on reasonable doubt, and also instructed the jury that they must find the animal belonged to Hamilton before the could convict. The charge as given under the facts of this case sufficiently presented the question referred to in appellant's exceptiou.''

In Eggleston v. State, 59 Texas Crim. Rep., 542, will be fouud the following:

''It is also contended that in charging the law of self-defense the court required the jury to believe that he acted in self-defense at the time he shot and killed, and if they so believed they would acquit the defendant. Now, in paragraph 21 of the court's charge, in charging on self-defense the court stated that appellant would be justified by law if he killed the party, if the party at the time was making an unlawful and violent attack upon him in a manner which produced a reasonable expectation of death or fear of some serious bodily injury, and that a reasonable apprehension or fear of death or some serious bodily injury would excuse a party in using all necessary force to protect his life or person, and that there was no neces.ity of it being actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him, nor was it necessary for appellant to retreat in order to avoid the necessity of killing his assailant; and the court further says: 'If from the evidence you believe that defendant, E. L. Eggleston, killed Woody Clancy, but

further believe at the time of so doing Woody Clancy had made an attack on him, which, from the manner and character of it, and considering the instrument used, caused Eggleston to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear, the defendant Eggleston killed Woody Clancy, then you will acquit the defendant.' It will be seen that this charge was followed in paragraphs 23 and 24 by the doctrine of reasonable doubt and the presumption of innocence, and that the reasonable doubt was to be applied to the different degrees after defining the different degree and applying reasonable doubt to the different degrees, they were then told if they had a reasonable doubt of the guilt of defendant they would acquit him. The complaint of the charge was that the court should have told the jury that if they believed defendant shot in self-defense or had a reasonable doubt thereof, they would acquit. Had the court omitted in his general charge to have submitted the doctrine of reasonable doubt there would have been some force in appellant's contention, but the court told the jury that if they had a reasonable doubt of defendant's guilt they would acquit, and if they believed that what he did he did in self-defense, they would acquit. It is not necessary for the trial court in submitting the different issues raised by the testimony to couple on to his charge the question of reasonable doubt on every issue. An inspection of the charge will show that the court in this case applied the doctrine of reasonable doubt to the guilt of the defendant as well as to both the degrees of culpable homicide of which appellant could be convicted under the charge of the court. This ground of the motion is without merit."

See also as announcing the correctness of the proposition that in most cases it is sufficient to apply the doctrine of reasonable doubt to the whole case, McCullough v. State, 23 Texas Crim. App., 636; Powell v. State, 28 Texas Crim. App., 398; McCoy v. State, 32 Texas Crim. Rep., 238; Jones v. State, 45 S. W. Rep., 596; Wallace v. State, 97 S. W. Rep., 1051; Edens v. State, 41 Texas Crim. Rep., 526. The Johnson case, 29 Texas Crim. App. 150, referred to in our original opinion, was decided before our present practice act became a law, but it appears from the opinion in said case that an exception was directed at the particular paragraph of the charge complained of. The omission to couple an instruction on reasonable doubt with the instruction on self-defense, when not specifically excepted to in the manner now required by law, has never been held reversible error within our knowledge when the charge on reasonable doubt is otherwise sufficient. No exception having been taken, we need not further discuss the proposition that appellant's rights were fully protected by the general charge on reasonable doubt and the other references thereto, in said charge above mentiond.

Believing upon mature reflection that we were in error ·in directing a reversal, the State's motion for rehearing will be granted, the reversal set aside and an affirmance ordered.

*Affirmed.*

ON REHEARING.

January ·23, 1924.

LATTIMORE, Judge.—Following the granting of the State's motion and the order affirming this case appellant has presented an able argument in support of a motion for rehearing in his behalf which we have given long and serious consideration. The first contention is that we erred in holding that he had taken no exception to that part of the court's charge upon which our original opinion reversing this case, was based. Appellant asserts that his bill of exceptions No. 4 evidences the exception to that part of the charge upon which he relies. We regret we can not agree with him. Said bill shows that when the court's charge was originally submitted to appellant he duly presented his written exceptions to same, which appear in the record. It also appears that thereupon the court amended and changed his charge as first submitted and inserted therein the charge on self-defense which is the subject of the complaint upheld in our original opinion. It also appears thàt when said charge as so changed was again submitted to counsel for appellant they urged the same objections and exceptions to it which had been theretofore filed, and it is stated in the bill that there was the additional exception that the court failed to apply the law of reasonable doubt as part of his charge on self-defense but the bill does not state that such additional exception was in writing. We have searched the record to see if there appears such additional written objection or exception to the charge but have failed to find it. A bill of exceptions in form usual for such bills, reciting that the charge was excepted to for various reasons, would not be sufficient to bring such alleged exceptions before us unless same appear to have been made "in writing distinctly specifying each ground of ·objection," as is provided in Article 735, C. C. P. An exception to a charge of the court taken orally, even though preserved by bill of exceptions approved by the trial court, does not comply with the law as written in the statute. Failing to find in the record any written exception to the charge of the court in the regard under discussion, we must adhere to our opinion already expressed that there was no such exception taken to the charge.

Appellant also complains of the overruling of his motion to quash the return on the special venire. One hundred and twenty-five men were ordered and fifty-four were summoned. From appellant's mo-

tion and bill of exceptions it appears as his ground of objection that as to thirty-three veniremen no return was made and as to the remaining thirty-eight the return was insufficient. When the motion to quash was presented the case was postponed one day and leave given the sheriff to amend his return. Upon the day following the appellant filed a supplemental motion to quash, asserting that the sheriff had filed a paper purporting to be an amended return as to the thirty-three jurors upon whom no return had been made originally. This amended return nowhere appears in the record, nor does the supplemental motion to quash. The bill of exceptions taken to the refusal of this motion and supplemental motion does not show that said supplemental motion was sworn to. We are not prepared to hold that the amended return as to the thirty-three veniremen, is not sufficient or that it shows but conclusions. Powers v. State, 23 Texas Crim. App., 61; Parker v. State, 33 Texas Crim. Rep., 111; Colon v. State, 48 Texas Crim. Rep., 343. It seems to be generally held that the fact that the entire number of jurors ordered is not summoned, would not be ground for quashing the venire. Hall v. State, 28 Texas Crim. App., 146; Taylor v. State, 14 Texas Crim. App., 340. We do not think any error was committed.

We do not think any error was committed in allowing testimony as to the blood found on the car or around the scene of the shooting and the statement that at the place where the body of deceased was found there was a little blood.

As we understand the facts in this case appellant's contention was that he was shot by deceased in the head and then took from her the pistol used by her, and shot her with it. This being true we fail to see the applicability of a special charge to the effect that if deceased was armed with a pistol at the time she was killed, etc., the law presumes that deceased intended to murder the defendant or inflict upon him serious bodily injury.

The bill of exceptions complaining that a witness stated that the body of deceased had a wedding ring on its finger, states only the grounds of the objections as made by appellant's attorney at the time, and in this form presents nothing which we can consider or hold tenable as supporting the said grounds of objection. The argument of appellant in his brief against the admission of this evidence proceeds on the assumption that we must consider the objections as true and as stating the facts. Under the uniform holdings of this court we can not do this, nor can we appraise the weight of the objections stated in the bill of exceptions in the absence of the facts which would appear to support or justify the objections made.

Regretting our inability to agree with any of the contentions made by appellant in his motion, same will be overruled.

*Overruled.*

ORDER ON REQUEST TO FILE SECOND MOTION FOR REHEARING.

February 6, 1924.

HAWKINS, Judge.—Appellant requests permission to file a second motion for rehearing, asserting that many alleged errors were not considered either on the original submission or on motion for rehearing. In the original opinion and the one granting the State's motion for rehearing only one question was discussed, but in the opinion overruling appellant's motion for rehearing a number of subjects were discussed and all bills of exception considered.

Appellant's request will therefore be denied.

*Request denied.*